[Civ. No. 3661. Fourth Dist. Nov. 19, 1947.]

THE CITY OF SAN DIEGO et al., Respondents, v. THE STATE BOARD OF EQUALIZATION et al., Appellants.

Fred N. Howser, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Appellants.

Ralph E. Swing, Phil D. Swing and C. H. Scharnikow, as Amici Curiae on behalf of Appellants.

J. F. DuPaul, City Attorney; Bertrand L. Comparet, Deputy City Attorney; James Don Keller, District Attorney, and Bertram McLees, Jr., Deputy District Attorney, for Respondents.

BARNARD, P. J.—This is an appeal from a judgment ordering the issuance of a writ of mandate directing the State Board of Equalization, hereinafter called "the board," to cancel and annul 52 additional on-sale liquor licenses which were issued pursuant to section 38f of the Alcoholic Beverage

Control Act (Stats. 1945, ch. 1401; 2 Deering's Gen. Laws, Act 3796), which will be referred to as "the act."

Section 38f was added to the act in 1945. At that time there were 364 on-sale licenses in effect in San Diego County. Under a rule of the board no new licenses had been issued since 1939. The population of that county was 289,473, as shown by the 1940 census. Later, special censuses had been taken in all cities in the county, with the exception of Escondido, and in the unincorporated portion of the county. The special census in the city of San Diego was not completed or the result announced until after these licenses were issued, although a "spot census" had theretofore been taken.

After the adoption of section 38f, and on November 18, 1945, representations were made to the board by persons and organizations from San Diego County that its population had greatly increased, and that an unreasonable discrimination existed in this regard. The board thereupon ordered a survey and report to be made by the State Liquor Administrator. On December 13, 1945, he reported, among other things, that there were at least 415,875 persons in certain areas in the county. The board, upon the information presented, determined that the population of the county was at least 415,875, and that a discrimination existed with respect to the ratio of licenses to population, as compared with other counties, and authorized its staff to receive applications for new licenses during the month of January, 1946. Three hundred and twenty-five such applications were filed, each applicant filing the standard form of application and, in addition, a "preliminary application" with additional information called for by the board, including a question as to how the public convenience would be furthered by granting the same. Notices were given, the applicants were investigated in the usual manner, and 225 of the applicants were found to meet the general qualifications. In all cases where a protest was filed the applicant was eliminated. On April 18, 1946, the board, after consideration of all matters before it, ordered the questioned licenses issued to 52 of the applicants against whom no individual protests had been made.

Before these licenses were issued, and on March 26, 1946, the city council of San Diego passed a resolution reciting, in effect, that the board was acting without proper evidence, that no discrimination existed, that public convenience and necessity did not demand more licenses, and that, in its opinion, it would be contrary to public welfare and morals

to issue more licenses prior to the 1950 census, and directing that a protest and demand for hearing be filed with the board. On the same day, the mayor and city manager sent a copy of this resolution to the board, with a letter stating that they protested against the issuance of additional on-sale licenses in the city; that those already issued were not only sufficient but in excess of any actual need; that more would be detrimental to the public interests; that the amount of business done by the present licensees had diminished; that no discrimination existed; and that a public hearing upon reasonable notice was desired ''before the Board commits itself to the issuance of further on-sale licenses in this community.'' No hearing on this protest was held by the board. Although the board of supervisors directed the district attorney to file a similar protest, none was filed with the board, but the county later joined the city in this action.

The petition filed in this action followed the lines of the resolution and protest sent to the board, and alleged, in substance, that more than one license per thousand population, under the 1940 census which was controlling, were already outstanding, and that under existing circumstances and the law no additional licenses were justified or could be issued. While the 52 new licensees were not named as parties to the action, the petition alleged, as to each of them, that he had failed to set forth in his application, and prove, the matters required by paragraph 6 of section 38f. It was further alleged that no public hearing had been accorded to the city on its protest, and that this protest was not based upon any objection to the individual licensees or premises, but upon the contention that an excessive number of licenses already existed and that any more would be both unnecessary and detrimental to the public morals and welfare.

The board's answer and return, in addition to its denial of the matters in the petition, set forth the minutes of the board and transcripts of the proceedings at the three meetings held in this connection, with the evidence received by the board and its findings thereon. Among other things, it was also alleged that the population of San Diego County had increased since the 1940 census, and exceeded 415,875 at all times in question; that the additional licenses were within the number permitted by section 38f of the act; that no protest had been filed against any particular applicant, or on the ground that the population was not at least 415,875,

or upon any ground specified in the act; and that no protest of any kind was filed within the time specified in the act. A special defense was based on the failure to bring in the individual licensees as parties to the action.

At the hearing it was conceded that a special census of the city had been completed and that the result had not yet been announced, and it was stipulated that when announced this census, with other special censuses in the county, would show that the population of the county was at least 415,001 persons. A letter and a certificate from the director of the bureau of the census were introduced in evidence. The letter stated that while no statement could be made as to the official population of the county upon any given date, from a sample survey taken in March, 1944, "a figure of 415,875 was reported as the population of the county." It was further stated that the enclosed certificate presented the population of various areas within the county as of the dates indicated. This certificate recited that, according to the returns of special censuses, the population of eight areas within the county under special censuses taken at various times between June 6, 1944, and April 17, 1946, was certain numbers which total 546,874 (omitting the census for Escondido, which was not taken until June 3, 1946.)

The trial judge filed an opinion in which he interpreted the last sentence of paragraph 2 of 38f as limiting any action under paragraph 5 of that section, and accordingly held that no sufficient showing could be made until the completion of a new census report, that the 1940 census was controlling here, and that no additional licenses could be issued. In its findings the court found all of the allegations of the petition to be true. Among other things, it was found that a special census had been separately taken in each of the separate areas of the county, from which it would be determined that the number of inhabitants was not less than 415,001 persons; that the evidence received by the board on December 11, 1945, was not received under oath and was merely hearsay and opinion; that in issuing the licenses the board acted without evidence; that the board did not require the applicants for these new licenses to allege and show the things required in paragraph 6 of section 38f; that a copy of the petition and of the alternative writ was served on each of the 52 licensees, with the exception of five who were not served; and that none of the licensees had

intervened or otherwise appeared in the action. Judgment was entered directing cancellation of the 52 licenses and the board, its members and officers have appealed.

The appellants contend that the petition did not state a cause of action; that the evidence does not support the findings; that the court was without jurisdiction to declare the licenses void; and that the judgment is against law. While the respondents do not and could not claim that the actual increase in population was not sufficient to justify these additional licenses on the basis of one for each 1,000 of the then population, they earnestly contend, for various reasons, that the board was without power to issue these licenses under the circumstances here appearing, and that under the law these licenses are utterly void. In passing upon the questions thus raised, and since the court largely followed the respondents' contentions, we will consider the several reasons advanced by them for the claimed invalidity of these licenses.

Most of the questions raised depend upon an interpretation of the meaning and effect of section 38f. That section provides for a limitation on the number of licenses which may be issued in any county, and further provides for an increase in the number otherwise allowed, under certain circumstances. Insofar as material here, the second paragraph of this section limits the number of on-sale licenses in any county to one for each 1,000 or fraction thereof of its inhabitants, with the provision that no additional licenses "other than . . . as permitted hereinafter in this section," shall be issued where that ratio has been exceeded. The last sentence of this paragraph reads:

"Population, for the purpose of this paragraph, shall be determined by the most recent United States decennial or special census."

The fifth and sixth paragraphs of this section, outlining the circumstances under which additional licenses, as referred to in the second paragraph, may be issued and also setting forth the requirements for any individual application which is based upon the ground of increased population, read as follows:

(5) "Whenever it shall be made to appear to the board by satisfactory evidence that the population in any county shall have increased by more than 1,000 or multiples of 1,000 inhabitants since the most recent United States decennial or special census, and it shall appear to the board that by

reason thereof, the inhabitants of such county are unjustly and unfairly discriminated against, and *provided that the total number of licenses in such county do not then exceed the maximum specified in the second paragraph of this section,* the board shall have power to issue not to exceed one on-sale general license and one off-sale general license for each increase of 1,000 inhabitants in such county since the taking of such census. In all other respects the limitation hereinbefore provided for shall continue in effect.

(6) "Any person applying for an off-sale general license or on-sale general license on the ground of increased population as hereinbefore provided, shall set forth in his application for such license and shall affirmatively show (1) that he is a qualified applicant and that his premises qualify under the law and rules and regulations of the board, (2) that the issuance of the license applied for would serve the public convenience or necessity, (3) that the issuance of the license applied for would not be contrary to public welfare and morals, (4) that inequality in the ratio of licenses exists between the community in which the applicant's premises are located and other communities in the State, (5) that the population in the county for which such license is applied has increased to the extent and under the conditions mentioned in the preceding paragraph of this section." (Italics and paragraph numbers added.)

The seventh paragraph requires an investigation and report when "any such application" is filed with the board, and the eighth and final paragraph of the section reads:

"If a protest against the issuance of any license is filed with the board, the hearing thereon shall be had and conducted as provided in this act."

It is first contended that these 52 licenses were issued in excess of the statutory limit specifically provided by section 38f. It is argued that paragraph 5 of this section permits the issuance of additional licenses not merely when the population has increased, but provided also that the number of licenses already outstanding does not exceed the maximum specified in the second paragraph; that this maximum, by the language of the second paragraph, must be determined by the most recent census; that the power of the board to issue additional licenses, even where the population has increased, depends entirely upon whether the number already outstanding exceeds the maximum fixed by the second paragraph, under the last census; that the Legislature intended by

38f to provide that in counties where the limit, as thus fixed, had not already been exceeded the board could issue more licenses upon satisfactory evidence of increased population, but in counties where that limit had been exceeded in the past the board could not act upon any evidence other than that of a completed new county-wide census; that 364 licenses were already outstanding in this county, which was in excess of the 290 which was the maximum allowable under the 1940 census; and that it follows that these licenses were all in excess of the statutory limit fixed in section 38f.

 The language used in section 38f discloses an intention contrary to that thus contended for. The last sentence of paragraph 2, providing that population shall be determined by the most recent census, is specifically limited by the words "for the purpose of this paragraph." Not only does this indicate an intention that this method of determining population shall not be controlling with respect to other paragraphs, but paragraph 2 also clearly provides that no additional licenses, beyond the limit there fixed, shall be issued "other than . . . as permitted hereinafter in this section." This refers to paragraph 5, which authorizes such additional licenses where certain things have occurred "since the most recent . . . census." These provisions indicate an intention to make an exception to the general rule, set forth in paragraph 2, that population must be determined by a census, and to provide that additional licenses may be issued based upon "satisfactory evidence" of a sufficient increase in population since a census was taken. The condition set forth in the fifth paragraph, "provided that the total number of licenses in such county do not *then* exceed the maximum specified in the second paragraph," clearly relates to the situation that will exist after the additional licenses thus permitted are issued, and not to whether or not an excess has previously existed or to the number outstanding before the determination of an increase in population was made.

 The plain meaning of paragraph 5 is that when an increase in population, since the last census, appears by satisfactory evidence, the board shall have power to issue additional licenses providing that the total of the new and old licenses shall not exceed the maximum, fixed in the second paragraph, of one license for each 1,000 people. The interpretation argued for by the respondents is opposed to both the spirit and letter of the fifth paragraph and would largely,

if not entirely, destroy its meaning and intention which is to permit additional licenses when a sufficient increase in population has taken place between censuses. Insofar as the language of the statute is concerned, the issuance of these licenses was not in excess of the statutory limit.

█ It is next contended that these licenses are void because the respective applicants did not comply with the requirements of section 38f in that they did not set forth in their applications all of the five matters specified in paragraph 6 of this section. Each of the applicants filed an ordinary application and a supplemental application as called for by the board. The supplemental application contained nothing with respect to the matters mentioned in paragraph 6, except for one question as to why public convenience would be furthered by granting the application.

This argument seems to be based upon the theory that paragraphs 5 and 6 are inseparably connected in forming one complete procedure, under which additional licenses may be issued, and that no such licenses can be issued if any part of the procedure is omitted. We think this view is erroneous. █ Paragraph 5 authorizes the board to issue additional licenses, within the limit fixed, when it appears to the board that an increase in population has resulted in a discrimination. The board is given this power on these conditions alone, with nothing said about the necessity of alleging or proving the additional matters mentioned in paragraph 6, or about acting only upon a special kind of application.

█ On the other hand, paragraph 6 permits any person to apply for a license on the same ground. In that event, he must allege and prove not only the additional elements of convenience, or necessity, and of public welfare and morals, but also the matters of increased population and discrimination, as otherwise required by paragraph 5. This indicates that it was not intended to make paragraph 6 applicable in cases where the board had already acted under paragraph 5.

█ The intention seems rather to be to provide, by paragraph 6, an additional procedure available to individuals in cases where the board has not already acted under paragraph 5.

█ There is nothing unreasonable in requiring a broader showing, where the entire matter is initiated by an applicant for a license, than is required of the board in determining whether a particular situation exists. It would be unreason-

able, however, to interpret these provisions as depriving the board of power to act without first requiring the applicants to again allege and prove the very things which the board had already passed upon and found to exist. The contention that these applications are not sufficient to meet the jurisdictional requirements of the statute cannot be sustained.

It is next contended that these licenses were void because there was no evidence before the board to show jurisdictional facts. Most of the argument in this connection is to the effect that no evidence was produced before the board, by the individual applicants, to show the facts required by paragraph 6 of section 38f. This contention is sufficiently disposed of by what we have said in discussing the preceding point.

Aside from this contention, it is further argued that the board made its finding and determination as to increased population and discrimination, as required by paragraph 5, on evidence that was merely hearsay and opinion, and without sworn testimony. The record discloses that at its various hearings on this matter a full report from the State Liquor Administrator was received, a number of individuals and representatives of institutions presented their views with facts and figures, and a large number of documents were received, including census reports, comparisons with other counties in the state, newspaper clippings, chamber of commerce and other publications, and many other things. Many facts were thus brought out, as well as some things which could only be matters of opinion. While the question of increase in population was one of fact, there was considerable practical evidence of that fact, and it was never disputed, even during the trial of this action, that the actual increase in population greatly exceeded that which the board found to exist. The question as to discrimination, while one of fact, involved a large element of opinion, and depended upon statistics and official records in various communities of the state, and upon matters which neither called for nor which could have been much affected by the addition of sworn testimony. Paragraph 5 of section 38f provides that such additional licenses may be issued whenever it shall be made to appear to the board by satisfactory evidence that an increase in population and a discrimination exists. In view of the requirements of this statute, and of the nature of the questions before the board at these hearings, it cannot be held that the evidence before the board was legally insufficient, in such a proceeding, to sustain the finding and determination which

was made. (*Parente* v. *State Board of Equalization,* 1 Cal. App.2d 238 [36 P.2d 437] ; *Ray* v. *Parker,* 15 Cal.2d 275 [101 P.2d 665].)

We regard the next point raised, that the 52 licenses are all void because of the claim that some of them were issued in lieu of other licenses, contrary to the provisions of section 38f, as without merit and as not supported by the record.

The respondents' final contention is that the city was entitled to a hearing on its protest, and that the failure of the board to grant such a hearing was jurisdictional and makes all of these licenses void. As a practical matter, it is difficult to think of any good reason for the board's action in this respect, regardless of whether or not such a hearing was required by law, unless it desired to emphasize a fundamental evil in our present liquor control law, and to help bring about a repeal thereof at an earlier date than would otherwise be possible. However, we are here concerned with what was required by the existing law.

 Regardless of any individual opinion as to the wisdom thereof, the power of regulating and licensing the liquor business has been vested by a vote of the people in the state government. (Const., art. XX, § 22.) One result of this elimination of all right of local control is that the only rights of protest or to a hearing, in connection with the issuance of licenses, presently existing, are those specifically given by the provisions of the act. The controlling question is whether the right here claimed is included in the rights thus given.

Section 21 of the act provides, in connection with an original application for a license, that notice shall be given to the governing body and certain officers of a county and city, and that if a protest is filed within 15 days a public hearing must be held within the county or city before a license is issued. No such protest was here filed, and none within that time. Section 39 of the act provides for the denial of a license on the ground of an adverse report with respect to an applicant or to the premises and, in effect, permits the applicant to then petition for a further hearing if he so desires. In the event he does so, the section further provides that protests may be made at any time prior to the issuance of a license. No such a situation existed here. Sections 40, 40.5 and 41 of the act provide for complaints against any licensee who has already been licensed and for a hearing thereon, but none of these sections have any application here. All of these sections seem to apply to protests, and to per-

mit objections to be made, against the issuance of specific licenses, or to complaints against specific licenses; and also to protests on individual grounds, and not with respect to an issue of policy before the board.

The respondents argue that the protest made by the city on March 26 was filed within the time permitted by the act, because of that part of section 39 which reads: "Protests may be made to the board at any time prior to the issuance of a license against either the original issuance of a license or the renewal of a license." Not only was the protest here made not one of the kind there contemplated, but that provision itself is not a general one extending the right of protest as given in other connections, but is one which is related to, and made applicable in, the particular circumstances covered by section 39. It merely provides that in a situation where a license has been once denied, because of an adverse written report, and a subsequent hearing is had upon a petition for further consideration, protests against that license may be made at any time prior to the time it is issued.

The respondents further argue that a right of protest and hearing was given to them here by paragraph 8 of section 38f, which reads: "If a protest against the issuance of any license is filed with the board, a hearing thereon shall be had and conducted as provided in this act." ▮ Not only was this not intended to enlarge the rights theretofore given, nor to so extend the right of protest as to cover the general policy with respect to issuing licenses, but it rather clearly appears that it was intended to protect the already existing right of protest, as against individuals and places, and to make this applicable to any additional licenses which might be applied for, either under paragraph 6 or after proceedings taken under paragraph 5.

▮ It seems quite clear that section 38f of the act was adopted for the purpose of providing a limitation on the number of licenses and, by way of exception, to permit the issuance of additional licenses where an increase in population in a particular county would make the application of the rule more reasonable. It was not adopted for the purpose of extending any rights of protest or to a hearing thereon which had already been given to persons or communities, nor to enlarge the grounds upon which protests might be made. Nothing in section 38f indicates any intention to give to cities or counties any right to make a general protest against the

policy of issuing additional licenses, a right which would be entirely different in nature from anything otherwise given to them, and contrary to the purpose expressed in the constitutional provision which vests such matters exclusively in the state government.

We find nothing in section 38f, or in any other provision of the act, which gives the city a right to protest upon the grounds or for the purposes disclosed by the protest made by the city on March 26. It follows that no jurisdictional defect appears in this connection which took away the board's power to act, or which makes these licenses void.

The appellants raise another serious question as to whether these licenses could be ordered cancelled in a proceeding to which the licensees were not made parties. Under the views above expressed, it is unnecessary to consider this and two other points raised by them and more exhaustively treated in amicus curiae briefs which have been filed in their support.

It is our function to pass upon the law as it is, and not to apply our personal views of what it should be. While we entertain grave doubts as to whether the public convenience, welfare and morals of this county will be promoted by the issuance of these licenses, we are forced to the conclusion that the board did not exceed its powers in issuing them, and that the court erred in directing their cancellation.

The judgment is reversed.

Marks, J., and Griffin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 15, 1948. Shenk, J., voted for a hearing.