[Civ. No. 5219. Third Appellate District.—October 4, 1934.]

ANTHONY PARENTE, Petitioner, v. THE STATE BOARD OF EQUALIZATION OF THE STATE OF CALIFORNIA, Respondent.

Wallace Shepherd, William B. Hornblower and R. C. Fleming for Petitioner.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

PLUMMER, J.—This cause is before us upon the application of the above-named petitioner praying that a writ of mandate be directed to the respondent directing and commanding the respondent to issue an "on sale" beer and wine license for premises situate at No. 154 Columbus Avenue, in the city of San Francisco.

It appears from the record that on or about the third day of April, 1934, the petitioner above named caused to be filed with the State Board of Equalization an application for an "on sale" beer and wine license, sales to be made at a restaurant conducted by the petitioner at 154 Columbus Avenue, San Francisco.

The application was made upon a blank furnished by the respondent, all questions upon the blank appearing to be answered in accordance with the rules and regulations of the respondent applicable to applications for "on sale" beer and wine licenses.

Following the application of the petitioner for an "on sale" beer and wine license, a protest against the issuance thereof was filed by William J. Quinn, chief of police of the city and county of San Francisco. Thereupon the petitioner applied for a hearing, and time for the hearing was set by the respondent, and notice thereof given to all parties interested. At the conclusion of the hearing the application of the petitioner was denied.

Basing his argument upon section 22 of article XX of the Constitution, being the amendment adopted November 8, 1932, effective December 5, 1933, and the case of *Sandelin* v. *Collins*, 221 Cal. 147, decided June 26, 1934 [33 Pac. (2d) 1009], petitioner contends that the respondent exceeded its jurisdiction, and had no right or legal authority to deny the issuance of an "on sale" license to the petitioner. In other words, that a petitioner for an "on sale" license, where meals are furnished has an absolute right to such a license, and that in determining whether the premises are proper and suitable therefor, the law goes no further than empowering the State Board of Equalization to determine the construction of the building in which the sales of wine and beer are proposed to be made. This, however, is, we think, a limited and too narrow construction to be given not only to the constitutional provision, but also to the State Liquor Control Act and the rules of procedure adopted

by the State Board of Equalization relative to applications for an issuance of "on sale" licenses.

After setting forth in full section 22 of article XX of the Constitution, the Supreme Court, in the case of *Sandelin* v. *Collins, supra,* uses the following language with reference to the provisos therein contained, to wit: "The provisos are included in the constitutional amendment. The effect of each is to place limitations on the power theretofore in the section vested in the law-making department of the state. The first proviso is one of prohibition against saloons and other public drinking places, and the second is one of assurance against prohibition in specified particulars." The second proviso, however, does not refer to or limit the power given to the state under the constitutional amendment to regulate the sale of wines and beer. It simply reads: "Subject to the above provisions, that in hotels, boarding houses, restaurants, cafes, cafeterias, and other public eating places, wines and beers may be served and consumed with meals furnished in good faith to the guests and patrons thereof." Not a word appears in this proviso, as we have said, limiting the power given to the legislature to regulate the sale. Reasonable construction, we think, however, in permitting wine and beer to be served and consumed with meals would necessarily include the right to sell, but that does not alter the fact that the sale must be made in accordance with the acts of the legislature and the rules and regulations of the State Board of Equalization adopted in pursuance thereof. This gives to the State Board of Equalization the power to determine the suitability and the fitness of the premises where the proposed "on sale" is desired to be made. We think the word "premises" includes far more than simply a structure with four walls, a roof, a dance floor, kitchen and dining-room. It is not simply a question of whether the structure is of wood, brick, concrete, weather-proof, properly heated, inviting or uninviting. The premises include the location of the structure or building, irrespective of the material of which it may be composed. This involves questions affecting the peace, safety and good order of whatever surrounds the place where the "on sale" is to be made.

This brings us to a consideration of the testimony contained in the record upon which the State Board of

Equalization must be presumed to have acted. It there appears that we have before us a second application of the petitioner for an "on sale" license covering the same premises. In the first application the petitioner desired an "on sale" license, locating the premises as No. 587 Pacific Avenue, in a structure known as and called "La Inferno". This application being denied, a second application was presented for the consideration of the board, describing the premises as "No. 154 Columbus Avenue", and the structure as "The Garden", being simply a back entrance reached from Columbus Avenue 150 feet distant, and leading to "La Inferno".

We quote from the record the following letters considered by the State Board of Equalization upon the hearing of the petitioner's application, to wit:

"Sacramento, Calif., April 7, 1934.

"Mr. Wm. J. Quinn,

"Chief of Police,

"San Francisco, Calif.

"Dear Mr. Quinn:—

"Attached is your duplicate license slip concerning an application of Anthony Parente, doing business as, The Garden, 154 Columbus Avenue, San Francisco, Calif.

"According to a report received at this office, this is a back entrance to the old Parente's Place at 543 Pacific Ave.

"May we have your report and recommendation as soon as may be convenient? The license will be held pending your report.

"Very truly yours,

"A. H. FLICKINGER

"Beverage Tax Supervisor.

"San Francisco, April 10, 1934.

"To: Mr. A. H. Flickinger,

From: Donald L. Marshall

Re: Anthony Parente, DBA
      The Garden
      154 Columbus Avenue,
      San Francisco, California.

"In reply to your letter of April 7th please be advised that this is the same party who applied for a license for

the Inferno on Pacific Avenue and as a matter of fact the premises are the same, the exception being that Parente has cut an entrance through from Columbus Avenue instead of using the Pacific Avenue entrance.

"There is no change in the situation other than the address.

"DON MARSHALL (Signed)
"Chief Investigator, San Francisco District."

"City and County of San Francisco,
"When replying kindly
 refer to No. 120179          April 12, 1934.
"Your file #29380
    "Mr. A. H. Flickinger, Beverage Tax Supervisor,
        "State Board of Equalization, Sacramento, Calif.
"Dear Sir:
    "In reply to your letter of April 7th relative to the application of Anthony Parente, doing business as The Garden, 154 Columbus Avenue, I am handing you herewith self-explanatory copy of the District Captain's report of investigation with the recommendation that the permit be denied.
    "Duplicate copy of the application is also returned.
                "Yours very truly,
                    "WM. J. QUINN, (Signed)
    "CC State Bldg., S. F. Wm. J. Quinn, Chief of Police."

"San Francisco, Calif., April 10, 1934.
"To: Wm. J. Quinn, Chief of Police,
    From: Frederick Lemon, Captain of Police,
"Subject: Recommendation in re 'On Sale' Beer and Wine
        permit for the premises at No. 154 Columbus Ave.
    "In re attached communication from State Board of Equalization, relative the advisability of granting an 'On Sale' beer and wine license to Anthony Parente, for the premises at No. 154 Columbus Avenue. I have had this matter investigated, and would advise:
    "In view of the fact that the premises to be occupied is the identical one for which an application was refused, the address at that time being given as No. 587 Pacific Avenue, I would recommend that the permit be not granted for the

following reasons. These places were a continuous police problem with numerous complaints prior to the so-called prohibition era and immediately again became a police problem following repeal.

"Respectfully submitted,

"F. LEMON (Signed) Captain of Police, Star No. 709."

---

"San Francisco, May 31, 1934.

"To: Mr. Frank M. Keesling, Assistant Secretary,

  Board of Equalization, Sacramento.

  From: Donald L. Marshall

"Re: Anthony Parente

  "154 Columbus Avenue,

    "San Francisco, California.

"In reply to your letter of May 29th please be advised that I have had a thorough inspection made of the premises for which this license is desired and find them to comply with the rules and regulations of the State Liquor Control Act in every respect.

"By referring to your files you will note that the address, 154 Columbus Avenue, is merely a back door entrance to La Inferno Cafe at 587 Pacific Avenue. The application of Anthony Parente for 587 Pacific Avenue was denied because of an objection filed by the San Francisco Police Department. An application was then filed giving the address of 154 Columbus Avenue with the idea of cutting through an entrance to La Inferno Cafe.

"As stated above the premises for which this license is desired, to-wit, La Inferno Cafe, comply in every respect with the requirements of the Liquor Control Act and so far as I am advised the applicant is of good moral character. I can see no objection to the granting of this license, other, of course, than the objection which has been raised by the Police as a general blanket objection to all places in the 500 block on Pacific Avenue. There will be no entrance on Pacific St.

"Comparatively speaking this place is better qualified for a beer and wine license under the Liquor Control Act than 75% of the places which have already been granted and are operating under State Licenses.

"DON MARSHALL (Signed)

"Chief Investigator, San Francisco District."

It thus appears that the respondent board had before it when considering the application of the petitioner for an "on sale" license what was presented to the police department of San Francisco preceding the prohibition era, and also the resumption of the same conditions immediately following repeal, the language being that after repeal the premises involved herein immediately became a "police problem". This language imports, we think, only one meaning, to wit: that immediately after repeal the premises became, as they had been before prohibition, a criminal problem. A police problem might very readily be interpreted by the board as presenting the difficulty of controlling the lawless, the idle, the dissolute and the criminal element of a city tending to congregate at a designated place, from which would flow almost every form of conduct inimical to the peace, safety and good order of the vicinity adjacent to the structure involved.

In this particular we may call attention to the absolute lack in the report of Don Marshall as to anything save and except the mere structure now known as 154 Columbus Avenue, called "The Garden" and formerly known as No. 587 Pacific Avenue, called "La Inferno". Nothing appears in his report of the conduct characterizing "La Inferno" immediately preceding the repeal of the Prohibition Act. There is nothing in his report relative to the police problems presented by the occurrences in "La Inferno" following repeal. The report does state "that this place is better qualified for a beer and wine license under the Liquor Control Act than 75 per cent of the places which have already been granted and are operating under State licenses". This is not exactly a recommendation, as it may readily be inferred from the language used that the board has already been too liberal, or to use a more common expression, too lax in granting "on sale" licenses in the city of San Francisco.

The record before us exhibits clearly that the respondent board has not acted arbitrarily, but upon an investigation which brought to their attention the questionable character of what had taken place in "La Inferno" following repeal, the additional burden cast upon the police department of the city of San Francisco in supervising, controlling or holding in check the criminal element of the city. That "La Inferno", now called "The Garden", became a police prob-

lem, which we think means just what we have stated following repeal, is not controverted by any of the testimony appearing in the record. All there is in the record concerning the premises is to the effect that the petitioner owns a dance hall, a dining room with tables and a kitchen and is prepared to serve meals. This is no answer to the police problems or criminal conditions to be augmented or increased by the granting of an "on sale" license.

We do not deem it necessary to cite authorities to the effect that where a board is authorized to act informally, and has before it sufficient evidence to satisfy the conclusions reached, and does not act arbitrarily, courts will not interfere.

The petition for a writ of mandate is denied.

Thompson, J., and Pullen, P. J., concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 28, 1934.

Langdon, J., voted for a hearing.