[Civ. No. 23358.   Second Dist., Div. Three.   June 23, 1959.]

DENNIS E. BOWMAN et al., Appellants, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD et al., Respondents; MARTIN N. SOUSA, Real Party in Interest.

Millikan & Montgomery for Appellants.

Edmund G. Brown and Stanley Mosk, Attorneys General, and Edward M. Belasco, Deputy Attorney General, for Respondents.

Kimball & Smith and W. Todd Smith for Real Party in Interest.

SHINN, P. J.—Martin N. Sousa made application to the Department of Alcoholic Beverage Control for an on-sale liquor license for his inn which is located in the unincorporated community of Idyllwild in the San Jacinto Mountains in Riverside County. Protests were filed by the Board of Supervisors of Riverside County and by seven residents of the community. An extensive hearing was had before a hearing officer who made findings and a recommendation against issuance of the license. These were adopted by the department and the application was denied. The ultimate finding upon

which the denial was predicated was that issuance of the license would be contrary to public welfare and morals. Sousa appealed to the Alcoholic Beverage Control Appeals Board which upon review of the record ruled that the decision of the department was without substantial support in the evidence, and upon that ground reversed the order of the department denying the application. Thereupon, the department, without further evidence and upon the facts previously found, exclusive of the ultimate fact, vacated its previous order and entered a new one granting the application. Seven of the protestants sought mandate of the superior court to the Appeals Board requiring the board to set aside its order and to affirm the original order of the department. After a trial the court rendered its decision that the Appeals Board had properly exercised its powers and mandate was denied. The same protestants have appealed.

The respective powers of the department and the Appeals Board were defined by the Supreme Court in the recent case of *Martin* v. *Alcoholic Beverage Control Appeals Board*, 52 Cal.2d 238 [340 P.2d 1].

In the court trial the review was directed to the decision of the board that issuance of the license would not be contrary to public welfare and morals. Due to the limitations of the powers of the board the sole question for its decision was whether there was substantial evidence before the department to justify its finding that issuance of the license would be contrary to public welfare and morals. Although the board's decision of that legal question furnished the basis of its order of reversal there is nevertheless in the decision an implied finding of fact that issuance of the license would not be contrary to public welfare and morals. The effect of the judgment of the trial court is to sustain the determination of the board that the evidence before the department was legally insufficient to sustain the department's finding of the ultimate fact which furnished the basis for the order of denial. We have concluded that the findings of the department were well supported by the evidence and that it was the manifest duty of the board to affirm the order of the department.

Material facts developed by the evidence were stated in evidentiary findings of the department, namely: Many years ago Idyllwild was established as primarily a religious community. This community proper is separated from two other nearby settlements, Pine Cove and Mountain Center, although

the entire area is commonly known as Idyllwild. Liquor is sold at Pine Cove and Mountain Center. In the entire area there are some 1,500 permanent residents, most of them in the principal community of Idyllwild. There are three churches there, although none of them is close by the inn. There are extensive camp grounds of religious institutions, youth camps, cultural and educational institutions, the Idyllwild Arts Foundation with a yearly enrollment of 1,000 people, mostly young people. The Southern California Conference of Religious Education maintains camp grounds which are used by great numbers of persons, and a nearby Christian Endeavor camp has an annual attendance of 5,000 persons. There is a proprietary school for eighth to twelfth grade pupils; there is a religious retreat known as ''Center of Creative Living'' which accommodates 1,000 overnight guests a year; there is a lodge commonly patronized by Girl Scout groups, Camp Fire Girl groups and religious fellowship camps. There was evidence of extensive use of special areas by Boy Scout troops and that many thousands of tourists, campers and lovers of the outdoors find recreation and rest in the community. There was also evidence that there is not to be found in Southern California a comparable religious community and that one of the factors that has led to its extensive development has been the absence of establishments for the sale of liquor in Idyllwild proper.

One finding of the department reads as follows: ''The community of Idyllwild, because of the retreats, schools, religious institutions, and children's camps located within the community and the persons attending these places, has as a community acquired the character as a place of religious observance and retreat and educational and cultural endeavor.'' This was followed by the finding of the ultimate fact.

The views of the board were in striking contrast. They were stated in its decision as follows: ''A careful reading of the facts found in the present proceeding does not reveal a single fact which warrants the determination that the issuance of this license would be contrary to public welfare and morals. In making this appraisal we have kept in mind the fact that the issue of public welfare and the morality of selling alcoholic beverages has been determined by the enactment of section 22 of article XX of the Constitution in the first instance, which brought to an end in the State of California the experiment of prohibition. . . . To sustain the present decision on the basis of the facts found would require that we recognize the

right of a segment of the residents of the State of California to create exclusionary areas for the sole reason that they are opposed to the distribution and sale of intoxicating liquor. This may not be done under our present constitutional provisions and a decision to the contrary is not a reasonable exercise of discretion.''

Among the witnesses were two members of the Board of Supervisors of Riverside County who expressed strong opposition and advanced cogent reasons in support of their objections to the issuance of the license. Many citizens present at the hearing expressed their opposition to the granting of the license although not a few were in favor of the application. The merits and demerits of the introduction of a barroom in the community were thoroughly explored. But there is no need for further statement of the evidence. On the one side there was to be considered the welfare of the citizens who value living in a long established religious and recreational community and who desire to see it maintained and available for numerous religious and cultural groups and organizations of young people free from the proximity of barrooms. The rights of these visitors deserve consideration. Upon the other hand, the department had to consider and no doubt did consider the wishes of the drinking sect who, if they do not have well-stocked cellars of their own, would have to spend an estimated five minutes in seeking refreshment at Pine Cove, where liquor is sold. This inconvenience would not be an infringement upon their constitutional rights as Sousa contends, and the reasoning of the board implies. The board acted under a misinterpretation of the extent of the rights which may be exercised pursuant to section 22, article XX of the Constitution. The fact that the sale or purchase of alcoholic beverages is not *per se* contrary to public welfare and morals adds nothing to the rights that flow from compliance with requirements of the regulating authorities.

Since the power to determine the facts in licensing matters is vested in the department and not in the board, or the courts, a review of the action of the department is governed by the familiar rule that where there is room for a reasonable difference of opinion with respect to the correctness of a finding of fact, it will not be disturbed by the reviewing tribunal. Neither the board nor the courts may disregard or overturn a finding of fact of the Department of Alcoholic Beverage Control for the reason that it is

considered that a contrary finding would have been equally or more reasonable.

We need only say that we believe that the department could and did reasonably conclude from the evidence that the establishment of a barroom in the Sousa property would detract from the quiet character of the community and from its usefulness as a retreat for religious, cultural and youth groups and to a material extent deprive them of unique advantages which they now enjoy, and the like of which may not be found elsewhere.

The judgment must be reversed with directions to issue mandate to the Appeals Board. When this is done the order of the department granting the license will necessarily be revoked by affirmance of the first order.

The judgment is reversed with instructions to enter new findings and conclusions of law and to issue a writ of mandate directing the respondent Appeals Board to vacate its previous order and to affirm the original order of the department. The appeal from the order refusing to strike items of cost being moot, it is dismissed.

Wood (Parker), J., and Vallée, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied August 19, 1959.