[Civ. No. 6533. Fourth Dist. May 25, 1961.]

RICHARD V. TORRES, Respondent, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., Appellants.

Stanley Mosk, Attorney General, E. G. Funke, Assistant Attorney General, William T. Chidlaw and William L. Gonser, Deputy Attorneys General, for Appellants.

Ralph Moradian for Respondent.

COUGHLIN, J.—This appeal involves the review of a decision by the Department of Alcoholic Beverage Control denying an application for an on-sale beer license.

Richard V. Torres, the respondent on this appeal, filed an application with the Department of Alcoholic Beverage Control, the appellant herein, for a license to sell beer on the premises where he operates a pool hall and lunch counter; the minister of a church located in this vicinity protested the issuance of this license; a hearing upon the matter followed; and the hearing officer conducting the same concluded that, although the premises in question were located within the immediate vicinity of a church, the issuance of the requested license would not be contrary to the public welfare and morals, and recommended that the license issue. However, in his report, the hearing officer noted that the area in question was one in which there was a "high concentration of licenses" and a "high incidence of arrests for drunkenness." The department refused to adopt the recommendation of the hearing officer; directed a further hearing; and enlarged the scope of inquiry, to the end that the issues presented were three-fold, i.e., whether the issuance of the license would be contrary to public welfare or morals (1) because the premises were located within the immediate vicinity of a church, (2) because "of an undue concentration of alcoholic beverage licenses in the vicinity," or (3) because issuance of the license "would aggravate an existing enforcement problem for the Department." Thereupon a further hearing was conducted; the hearing officer prepared a proposed decision including findings of fact and a determination of the issues which, in substance, were in favor of the applicant as to issue (1) but against the applicant as to issues (2) and (3); the department accepted this decision; the application was denied; and the applicant appealed to the Alcoholic Bev-

erage Control Appeals Board, which affirmed the decision of the department. Thereupon, the applicant undertook these proceedings in mandamus, contending that the findings in question were not supported by substantial evidence and that in denying his application, the department acted arbitrarily; the trial court sustained these contentions; and the judgment appealed from followed.

The department claims that the trial court weighed the evidence; did not confine its review to a determination as to whether there was any substantial evidence in the record to support the questioned decision; and that its judgment is erroneous.

The Constitution of California confers upon the Department of Alcoholic Beverage Control "the power, in its discretion, to deny . . . any specific liquor license if it shall determine for good cause that the granting . . . of such license would be contrary to public welfare or morals . . ." (Cal. Const., art. XX, § 22).　　The discretion thus vested is not absolute, but must be exercised in accordance with law; and the provisions that the department may deny "a license 'for good cause' necessarily implies that its decisions should be based on sufficient evidence and that it should not act arbitrarily in determining what is contrary to public welfare or morals." (*Stoumen* v. *Reilly,* 37 Cal.2d 713, 717 [234 P.2d 969] ; *Weiss* v. *State Board of Equalization,* 40 Cal.2d 772, 775 [256 P.2d 1] ; *Schaub's Inc.* v. *Department of Alcoholic Beverage Control,* 153 Cal.App.2d 858, 865 [315 P.2d 459].)　　As a consequence, a decision refusing to grant a license, which is not supported by sufficient evidence or is based on an arbitrary determination that the granting thereof would be contrary to public welfare or morals, constitutes an abuse of discretion and will be set aside. (*Vallerga* v. *Department of Alcoholic Bev. Control,* 53 Cal.2d 313 [347 P.2d 909] ; *Stoumen* v. *Reilly, supra,* 37 Cal.2d 713 ; *Schaub's Inc.* v. *Department of Alcoholic Bev. Control, supra,* 153 Cal.App.2d 858, 864.)　　On the other hand, the judicial review of such a decision, instituted by petition for a writ of mandate attacking the sufficiency of the evidence and alleging an abuse of discretion, is limited in scope; does not authorize a trial *de novo* or a reweighing of the evidence (*Covert* v. *State Board of Equalization,* 29 Cal.2d 125, 131 [173 P.2d 545] ) ; but empowers the court to determine only whether or not there is substantial evidence in the record of the proceedings before the department in support of its decision,

and whether or not its action was arbitrary. (*Thompson* v. *City of Long Beach,* 41 Cal.2d 235, 239-240 [259 P.2d 649] ; *Adler* v. *Department of Alcoholic Bev. Control,* 174 Cal.App. 2d 256, 258 [344 P.2d 366] ; *Marcucci* v. *Board of Equalization,* 138 Cal.App.2d 605, 608 [292 P.2d 264].) The issues respecting sufficiency of the evidence, the existence of "good cause," arbitrary action, and abuse of discretion are inter-related. The decision of the department may be arbitrary and constitute an abuse of discretion because the findings of fact which are the basis for its determination that the granting of a license will be contrary to public welfare or morals, are not supported by the evidence, or because the facts as found do not constitute "good cause" for such determination.

In considering the sufficiency of the evidence issue the court is governed by the substantial evidence rule "generally applied in judicial proceedings in this state" (*Martin* v. *Alcoholic Bev. etc. Appeals Board,* 52 Cal.2d 238, 246 [340 P.2d 1]) ; any conflict in the evidence is resolved in favor of the decision; and every reasonably deducible inference in support thereof will be indulged. (*Adler* v. *Department of Alcoholic Bev. Control, supra,* 174 Cal.App.2d 256, 258; *Marcucci* v. *Board of Equalization, supra,* 138 Cal.App.2d 605, 608.) In determining whether the decision of the department is arbitrary, its action is measured by the standard set by reason and reasonable people (*Weiss* v. *State Board of Equalization, supra,* 40 Cal.2d 772, 775-776; *Schaub's Inc.* v. *Department of Alcoholic Bev. Control, supra,* 153 Cal. App.2d 858, 866; *Altadena Community Church* v. *State Board of Equalization,* 109 Cal.App.2d 99, 106 [240 P.2d 322]), bearing in mind that such a standard may permit a difference of opinion upon the same subject (*Bowman* v. *Alcoholic Bev. etc. Board,* 171 Cal.App.2d 467, 471 [340 P.2d 652]) ; and the court may not substitute a decision contrary to that made by the department, even though such decision is equally or more reasonable, if the determination by the department is one which could have been made by reasonable people. (*Martin* v. *Alcoholic Bev. etc. Appeals Board, supra,* 52 Cal.2d 238, 248 ; *Bowman* v. *Alcoholic Bev. etc. Board, supra,* 171 Cal.App.2d 467, 472.) The question thus presented is one of law and not of fact. The department and not the court determines whether "good cause" exists for denying a license upon the ground that its issuance would be contrary to public welfare or morals (*Altadena Community Church*

v. *State Board of Equalization, supra,* 109 Cal.App.2d 99, 103; *Hansen* v. *State Board of Equalization,* 43 Cal.App.2d 176, 180 [110 P.2d 453]); the court determines whether or not the department acted arbitrarily in making its decision; if the decision is without reason under the evidence, the action of the department is arbitrary, constitutes an abuse of discretion, and may be set aside; but where the decision is the subject of a choice within reason, the department is vested with the discretion of making the selection which it deems proper, its action is within the scope of a valid exercise of the constitutionally conferred discretion, and the court may not interfere therewith.

In this case the department's findings of fact are separated into three groups, each group dealing with one of the issues presented for decision, viz., whether issuance of the license would be contrary to public welfare and morals because of (1) the presence of a church in the vicinity, (2) an undue concentration of licenses in the area, or (3) the aggravation of an existing enforcement problem. As to the first issue, it was found that the premises in question are 175 airline feet from a church; that drunken men congregated on or near the church of which "a goodly number" are of the "wino" class who obtain their liquor from off-sale wine stores in the neighborhood; that the church is operating under difficulties by reason of the presence of drunks in the area; but "it does not appear that the granting of an on-sale beer license to the proposed premises for use in conjunction with the pool hall and lunch counter operation would add any appreciable or substantial detriment to the functioning of this church."

With respect to the license concentration issue, it was found that the respondent's pool hall and lunch counter were centrally located in an area 12 blocks square, referred to as the "West End," containing 88 licensed premises of which 63 had on-sale licenses and 25 had off-sale licenses; that within a radius of 500 feet from the pool hall and lunch counter there were 26 licensed premises, with one in an adjoining building and two across the street; that the "West End" area was frequented by a large number of transient agricultural workers who loiter about the on-sale premises and "also make purchases of alcoholic beverages, largely wine at the off-sale stores," and where public drunkenness requires a large portion of the time and effort of the local police department, as evidenced by an average of 75 arrests per month. Also upon this issue the department found that "There is no evi-

dence to show that the consumption of alcoholic beverages in the West End area would be materially affected if this license were granted. But in view of the unduly large concentration of licenses within this area the establishment of another outlet for alcoholic beverages at the proposed premises would be contrary to public welfare and morals.''

Directed to the issue of an aggravated enforcement problem for the department were findings to the effect that its agents confined their patrolling principally to urban areas; that in the area in question two agents were assigned patrol duty two or three nights a week and sometimes two agents patrol this area every night of the week, depending on the season of the year; that normally six agents work the night shift in the four counties of Fresno, Madera, Tulare and Kings, for which the district office located at Fresno has the responsibility of enforcement; that one-third of the night crew concentrates its enforcement efforts in the ''West End'' area. Then follows this finding:

''The evidence does not show that pool rooms, as such, are a major source of alcoholic beverage control violations in the West End area, but the issuance of another on-sale license here would increase the number of premises to be patrolled and, therefore, aggravate the enforcement problems of the Department of Alcoholic Beverage Control to that extent.''

The department determined that issuance of the requested license would be contrary to public welfare and morals for the reason that ''there is an undue concentration of alcoholic beverage licenses in the vicinity of the proposed premises'' and for the further reason that ''it would aggravate an existing enforcement problem for the Department of Alcoholic Beverage Control.'' The issue on appeal is whether, under the evidence, these reasons constitute ''good cause'' for such determination. The denial of the license was not based on any personal disqualification of the applicant. Mr. Torres is part owner of an existing license for premises across the street from his pool hall and lunch counter.

■ At first blush it might appear that the addition of one more license in the ''West End,'' which would be limited to the sale of beer for consumption upon the licensed premises and which would not affect materially the consumption of alcoholic beverages in the area, within reason could not be contrary to the public welfare or morals. However, a consideration of the evidence in the light of the principles here-

tofore related leads to the inevitable conclusion that a reasonable difference of opinion, as to the effect which the issuance of the requested license might have upon public welfare and morals, justifiably might exist, and that the decision of denial, therefore, was not arbitrary. There are 88 licensed premises within the area in question; of these 26 are within a radius of 500 feet of the subject premises. The evidence before us adequately supports a conclusion that the concentration of licenses in a limited area, as compared with widespread issuance, apparently because of an incident increase in competition between dealers, breeds a tendency to disregard regulations restricting sales; is the source of a disproportionately greater number of liquor law violations; gives rise to law enforcement problems disproportionately more serious; necessitates a more intensive enforcement program, including a more frequent patrolling of licensed premises; and results in a disproportionate concentration of enforcement officers in the concentrated area. The Alcoholic Beverage Control Appeals Board, in its opinion affirming the decision of the department, commented on this phase of the matter and said:

"We may take official notice, from the number of appeals that have been presented to this Board, that licensees in areas of this character are prone to disregard the restraints which the law places upon them with respect to the sale of intoxicating beverages to minors and to obviously intoxicated persons; also in developing a greater degree of tolerance to the solicitation of alcoholic beverages and the activities of prostitutes who make such bars a resort for their illicit activities."

The supervising agent of the department for the Fresno district, who has supervised the subject area for the past 12 years, testified that among the serious enforcement problems existent in the area, in addition to those arising from drunkenness, were the attempted use of licensed premises by prostitutes for solicitation purposes, and the sale of intoxicants to minors; that premises frequented by minors, such as pool halls, require frequent checking to discourage sales to or drinking by them; that his agents have been in some of the pool hall premises in his district "constantly" and for this reason they have not had many arrests for violations involving minors.

The issue presented by the foregoing considerations is not necessarily whether Mr. Torres' premises would be a source of liquor law violations, but whether the addition of more

licenses in the area would increase the probability of occurrence of such violations in other premises. Of the six agents in the district assigned to night duty, two of them patrol the 88 licensed premises in the subject area at least two or three nights a week, and during some seasons of the year, every night of the week. On some nights four of the agents are assigned to this area. There are 2,300 licensed premises in the district. As a matter of mathematics, 3.8 per cent of the licenses in the district, being those located in the "West End," require from 9.3 per cent to $33\frac{1}{3}$ per cent of the law enforcement services provided for night patrol, depending upon the season of the year. It may be inferred that services supplied are services needed; and the fact that a disproportionate amount of available law enforcement services are supplied to the "West End" supports the further inference that the concentration of licensed premises in that area is a source of the problems creating the need for those services.

This case does not involve merely the granting of an additional license, but the granting of an additional license in a particular locality, viz., a locality already adequately licensed to meet the demand; a locality catering to transients whose drunken inclinations are a matter of police record; a locality described by the testimony as a "skid row" type of area; in short, a locality that any city would be better off without. The existence of this type of locality, the factors which aggravate its undesirable features, and those which perpetuate its existence are matters involving public welfare and morals.

Where the addition of a liquor license in a particular location is a factor related to public welfare and morals, the decision as to where the line between granting and denying should be drawn is peculiarly a matter of discretion, and even one more license may be "too many." (*Weiss* v. *State Board of Equalization, supra,* 40 Cal.2d 772, 777.) Furthermore, the fact that the department may have issued 88 licenses for the area under consideration does not foreclose a determination in the present proceeding that it should not have done so; and does not require the perpetuation of error. (*Weiss* v. *State Board of Equalization, supra,* 40 Cal.2d 772, 776; *Altadena Community Church* v. *State Board of Equalization, supra,* 109 Cal.App.2d 99, 105.) If the department now has determined that the concentration of licenses in a "skid row" area adds to the evils bred therein, its recognition of this fact and its consequent action in the instant case may not be

classified as arbitrary. It would not be unreasonable to effect the removal of objectionable concentration through the process resulting from expiration and refusal to grant replacements. Apparently this process is present in the instant case; the subject premises previously were licensed; this license came to an end as the result of what might be termed a natural business cause; and the instant decision denies a replacement.

The respondent, Mr. Torres, contends that any action of the department attempting to limit the number of on-sale beer licenses is contrary to law, and therefore unreasonable, because the Legislature in adopting the laws respecting limitations on the number of licensed premises has excluded beer from these restrictions. (Bus. & Prof. Code, §§ 23815, 23816, 23817, 23820.) However, the authority of the department to deny the granting of a license upon the ground that its issuance would be contrary to public welfare or morals is derived from self-executing provisions of the Constitution; exists independently of any legislation; and may not be restricted by statute. (*Vallerga* v. *Department of Alcoholic Bev. Control, supra*, 53 Cal.2d 313, 318-319; *Weiss* v. *State Board of Equalization, supra*, 40 Cal.2d 772, 775; *Jacques, Inc.* v. *State Board of Equalization*, 155 Cal.App.2d 448, 458 [318 P.2d 6]; *Schaub's Inc.* v. *Department of Alcoholic Bev. Control, supra*, 153 Cal.App.2d 858, 866-867; *Moore* v. *State Board of Equalization*, 76 Cal.App.2d 758, 760-765 [174 P.2d 323]; *Irvine* v. *State Board of Equalization*, 40 Cal. App.2d 280, 285 [104 P.2d 847].) Clearly, the decision under review is based upon the determination that granting the subject license would be contrary to public welfare and morals. The decision in question is not directed merely to a restriction on the number of licenses to be issued but upon the number of licenses to be issued in the particular area under consideration, which appears to have particular law enforcement problems. Moreover, the legislative regulations in question do not purport to express a policy favoring the unrestricted issuance of beer licenses. The consideration which must be given to an application for the issuance merely of an additional license is distinctly different from that which must be given to an application for the issuance of an additional license in a particular location. The location of the licensed premises is a pertinent, and many times, determinative factor. (*Weiss* v. *State Board of Equalization, supra*, 40 Cal.2d 772, 777; *Parente* v. *State Board of Equalization*,

1 Cal.App.2d 238, 241 [36 P.2d 437] ; *McRae* v. *Pine,* 25 Cal. App. 594, 598 [144 P. 983].)

The Department of Alcoholic Beverage Control not only is vested with the authority to grant or deny a license; and with a broad discretion in the exercise thereof; but also is charged with the solemn responsibilities incident thereto, not the least of which is its obligation to refuse a license if issuance thereof would be contrary to the public welfare or morals; and the courts will not interfere with its decision unless an abuse of discretion clearly appears. (*Martin* v. *Alcoholic Bev. etc. Appeals Board, supra,* 52 Cal.2d 238, 248; *Hansen* v. *State Board of Equalization, supra,* 43 Cal.App.2d 176, 179.) The decision under review is supported by substantial evidence and conforms to reason; no abuse of discretion or arbitrary action within the realm outlined by law appears; and the conclusion of the trial court to the contrary was error.

The judgment is reversed with instructions to enter judgment denying the petition for a writ of mandate.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied June 22, 1961, and respondent's petition for a hearing by the Supreme Court was denied July 19, 1961.