[L.A. No. 29932. In Bank. July 7, 1972.]

EDWARD J. KIRBY, as Director, etc., Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,
Respondent;
HARRY E. SCHAEFFER, Real Party in Interest.

434

---

---

**COUNSEL**

Evelle J. Younger, Attorney General, and Marilyn Mayer Moffett, Deputy Attorney General, for Petitioner.

Leo K. Gallant for Respondent.

Jack A. Otero for Real Party in Interest.

## Opinion

**BURKE, J.**—In this case we are asked to review a decision of the Alcoholic Beverage Control Appeals Board (Board) which reversed a decision of the Department of Alcoholic Beverage Control (Department) denying a petition for an off-sale beer and wine license. Since it appears that the Department's decision was supported by substantial evidence and was within its powers, we have concluded that the Board's contrary decision must be reversed.

On May 19, 1970, real party Schaeffer filed an application for an off-sale beer and wine license[1] for premises located in a college community generally known as Isla Vista, and adjacent to the University of California at Santa Barbara. On June 15, a protest was filed by James A. Webster, then Sheriff of Santa Barbara County. The protest asserted that if the license were granted to Schaeffer's premises, "it will tend to create a policing problem because of its proximity to the Santa Barbara campus of the University of California and the recent civil disturbances which occurred in this area." On August 6, the Department issued a notice of denial of the application, and on August 17, Schaeffer filed a petition for a hearing on the matter. (See Bus. & Prof. Code, § 24011.)

On September 21, a hearing was held and evidence taken on the question whether an off-sale license should be granted. Following the hearing, the hearing examiner issued a proposed decision in which he made certain findings of fact and recommended that the protest be overruled and the petition for license granted. The Department adopted all but one of the examiner's findings but refused to adopt his proposed decision. Instead, the Department sustained the protest and denied Schaeffer's petition based upon the following determination: "It would be contrary to public welfare and morals to issue a conditional off-sale beer and wine license to the applicant at these premises in that: 1. The premises is in a residential area and normal operation would interfere with the quiet enjoyment of their property by residents. 2. Issuance would create or aggravate an existing police problem in the area."

Schaeffer appealed the Department's decision to the Board, which reviewed the evidence and applicable law, concluded that the Department's decision lacked evidentiary support, was arbitrary and constituted an abuse of discretion, and accordingly reversed that decision. The Department here-

---

[1]The application sought a conditional license authorizing the sale of wine and malt beverages containing not more than 3.2 percent alcohol and of beer, in order to comply with applicable state law restricting the sale of intoxicating liquor within one mile of the university. (See Pen. Code, § 172.)

in seeks review of the Board's decision, contending that the Board disregarded substantial evidence in support of the Department's findings and erred in concluding that the Department had abused its discretion. (See Bus. & Prof. Code, § 23090 et seq., regarding judicial review of the Board's decisions.)

Before we discuss the evidence, it is appropriate that we set forth the applicable rules which govern review of decisions of the Department. By reason of article XX, section 22 of the California Constitution, the Department has "the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals . . . ." Section 22 also sets forth the Board's scope of review of decisions of the Department, providing that "[r]eview by the board of a decision of the department shall be limited to the questions whether the department has proceeded . . . in the manner required by law, whether the decision is supported by the findings, and whether the findings are supported by substantial evidence in the light of the whole record."

Under section 23090.2 of the Business and Professions Code, appellate judicial review of decisions of the Department is identical to that of the Board, requiring us to determine whether the Department's findings are supported by substantial evidence in the light of the whole record. (See *Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control,* 2 Cal.3d 85, 94-95 [84 Cal.Rptr. 113, 465 P.2d 1]; *Kirby* v. *Alcoholic Bev. etc. App. Bd.,* 261 Cal.App.2d 119, 121-122 [67 Cal.Rptr. 628].) Neither this court nor the Board may " 'disregard or overturn a finding of fact of the Department . . . for the reason that it is considered that a contrary finding would have been equally or more reasonable.' " (*Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control, supra,* at p. 94.) "[I]f it be conceded that reasonable minds might differ as to whether granting [a license] would or would not be contrary to public welfare, such concession merely shows that the determination of the question falls within the broad area of discretion which the Department was empowered to exercise." (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.,* 55 Cal.2d 867, 876 [13 Cal. Rptr. 513, 362 P.2d 337].)

■ Of course, the discretion exercised by the Department under section 22 of article XX of our Constitution " 'is not absolute but must be exercised in accordance with the law, and the provision that it may revoke [or deny] a license "for good cause" necessarily implies that its decisions should be based on sufficient evidence and that it should not act arbitrarily

in determining what is contrary to public welfare or morals.' " (*Martin* v. *Alcoholic Bev. etc. Appeals Board, supra,* 55 Cal.2d 867, 876; see *Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 2 Cal.3d 85, 95-96.) Nevertheless, it is the Department, and not the Board or the courts, which must determine whether "good cause" exists for denying a license upon the ground that its issuance would be contrary to public welfare or morals. (See *Torres* v. *Dept. Alcoholic Bev. Control,* 192 Cal. App.2d 541, 545-546 [13 Cal.Rptr. 531]; *Kirby* v. *Alcoholic Bev. etc. App. Bd., supra,* 261 Cal.App.2d 119, 122.)

As set forth above, the Department concluded that it would be contrary to public welfare and morals to issue an off-sale license to Schaeffer in that (1) the premises are in a residential area and normal operation would interfere with the residents' quiet enjoyment of their property, and (2) issuance would create or aggravate an existing police problem in the area. The foregoing conclusions were supported by the Department's findings and by substantial evidence in the record.

The evidence, much of which is summarized in the Board's findings, disclosed that Isla Vista is an unincorporated village approximately three-quarters of a mile in area, containing approximately 10,300 residents. Isla Vista, which is almost totally surrounded by the University of California at Santa Barbara campus, is a "bedroom" community for staff, students, administrative personnel and others employed by the university, as well as the home community for approximately 1,500 persons not associated with the university. There is a single shopping area for the entire village and university, in which real party Schaeffer owns several adjoining stores, including the proposed premises and a nearby restaurant offering take-out food service.

The median age of Isla Vista's population is 20 years. A county research analyst testified that as of February 1969, 40 to 45 percent of Isla Vista's 10,300 population consisted of persons 18, 19 or 20 years of age, 2,000 were 21 years old, and 5 to 10 percent were 17 years old or younger. More than half of the population were students with no other occupation. The foregoing figures do not include approximately 2,500 unmarried students living on campus. According to the university registrar, the total enrollment for Spring 1970 was 12,882, ranging in ages from 18 to 23; all but 2,100 students either lived in Isla Vista or on campus.

The premises sought to be licensed herein are located approximately 350 to 400 feet from the university campus; numerous off-campus residences and apartments are in close proximity to the premises, some as close as 150 feet. The closest on-campus student residence is 700 feet away. A Bank

of America building and so-called "Perfect Park," each the scene of recent student disturbances, are 210 and 100 feet respectively from the premises. There is no existing licensed premises of any kind in either Isla Vista or on the university campus; the nearest off-sale premises is three miles distant and serves Isla Vista patrons by a delivery service.

Sheriff Webster, who filed a protest with the Department, testified concerning the police problems which Isla Vista had recently experienced with its youthful population. Webster, who had been associated with the Santa Barbara County Sheriff's Department for the past 25 years and who had been its sheriff for eight years and nine months, explained that four separate incidents had occurred in the area from January 30, 1970, through June 12, 1970. The first occurrence took place on the university campus and lasted from January 30 through February 4; the next three incidents involved Isla Vista itself and extended respectively from February 24 to March 3, from April 16 to April 22, and from June 3 to June 12.

In connection with the initial, on-campus episode the university asked for and received assistance from outside law enforcement agencies, including the Sheriff's Departments of Santa Barbara, San Luis Obispo, Ventura and Los Angeles Counties, and the California Highway Patrol. Together, these agencies contributed an average of 200 men daily to assist the university in controlling the situation. During the second incident, a Bank of America building (located 210 feet from the proposed premises) was burned to the ground and the California National Guard was brought in to assist local agencies. During the three Isla Vista incidents, Sheriff Webster, whose force totaled 210 men, committed a minimum of 45 and a maximum of 140 men daily to restore order; in addition he received substantial assistance from other law enforcement agencies.

Webster personally witnessed each of the above occurrences, and described the rioting, property damage, burnings, window breakage and looting which took place. He noted that some of the rioters appeared to have been drinking, and he explained that his men could not effectively protect against looters merely by closing retail stores, for some closed stores were broken into and damaged.

According to Webster, Isla Vista has the *highest* crime rate in Santa Barbara County. In Webster's opinion, based upon his 25 years' experience with the sheriff's department, at least 50 to 60 percent of all persons arrested in the county were under the influence of alcohol. In view of the high crime rate in Isla Vista, and the fact that approximately 50 percent of its population were under 21 years of age, Webster had adopted a policy, even before the 1970 riots, of protesting the issuance of liquor licenses in

Isla Vista. Webster further pointed out that denial of Schaeffer's application would eliminate the possibility, in the event of renewed disturbances or rioting, that his store would be broken into and alcoholic beverages taken and consumed by looters and rioters. Webster explained that roadblocks could be set up to prevent the delivery of liquor into Isla Vista, but that there was no assurance that merely closing Schaeffer's store would prevent looters from breaking in.

There was, on the other hand, substantial evidence introduced to support Schaeffer's application. For example, the Department found, based upon testimony by persons favoring the application, that the residents of Isla Vista, and the university population and administration are "overwhelmingly" in favor of the application, and that the business interests and local community and service organizations are "predominantly" in favor thereof. The record also discloses that, on January 8, 1971, following the conclusion of the hearings but prior to issuance of the Department's decision, John W. Carpenter, newly elected Sheriff of Santa Barbara County and Webster's successor, sent a letter to the Department advising it that he would not protest Schaeffer's application.

 In spite of the contrary evidence in the record, it is readily apparent that substantial evidence exists to support the Department's findings and conclusions. Evidence of Isla Vista's high crime rate and youthful population, the recent series of disturbances and rioting, the proximity of the proposed premises to the university campus and student residences, and the relationship between crime and intoxication, together constitute ample evidence from which reasonable men might conclude that the existence of the licensed premises could cause or aggravate a police problem, could interfere with the residents' quiet enjoyment of their property, and consequently would be contrary to public welfare and morals. Although reasonable minds might differ on the question, based perhaps upon the fact that Isla Vista residents and businessmen, and university administration, failed to protest the application,[2] " 'such concession merely shows that the determination of the question falls within the broad area of discretion which the Department was empowered to exercise.' " (*Martin* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 55 Cal.2d 867, 876.)

The courts often have affirmed denials of licenses under similar circum-

---

[2]The Department may have discounted the lack of protests from residents, businessmen or university spokesmen on the basis that it represented either a natural reluctance to take a position unpopular in the community, an attempt to pacify the youthful population, or even an overriding self-interest. Most witnesses testifying in support of the application emphasized a general feeling of resentment or frustration in the community regarding the inability to purchase alcoholic beverages in Isla Vista.

stances. The cases generally agree that mere proximity to schools or churches may not constitute good cause for denial of a license. (See *Martin* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 55 Cal.2d 867, 875 [premises near church, but church did not protest and eight licensed premises already existed within 600-foot radius]; *Reimel* v. *Alcoholic Bev. etc. App. Bd.,* 255 Cal.App.2d 40, 45 [62 Cal.Rptr. 778] [premises near elementary school, but three licensed premises already existed within 900 feet from school, and no expert testimony introduced to support possible harm to public welfare].) On the other hand, proximity to a church or school coupled with some additional evidence disclosing a potential threat to the public welfare or morals has been held sufficient to justify denial of a license. (See *Weiss* v. *State Board of Equalization,* 40 Cal.2d 772, 774 [256 P.2d 1] [proposed off-sale premises located 80 feet from public high school, and some buildings used for R.O.T.C.]; *Kirby* v. *Alcoholic Bev. etc. App. Bd., supra,* 261 Cal.App.2d 119 [off-sale premises located 250-400 feet from school whose pupils ranged from ages 5 to 14; area largely residential; takeout food sold in nearby restaurant]; *Reimel* v. *Alcoholic Bev. etc. App. Bd.,* 250 Cal.App.2d 673 [58 Cal.Rptr. 788] [off-sale premises located 200 feet from elementary school in residential area; likely that beer and wine would be consumed near school]; *Bowman* v. *Alcoholic Bev. etc. Board,* 171 Cal.App.2d 467 [340 P.2d 652] [on-sale premises in religious community with nearby youth camps and school]; *Schaub's Inc.* v. *Dept. Alc. Bev. Control,* 153 Cal.App.2d 858 [315 P.2d 459] [off-sale premises 100 feet from church holding frequent youth meetings for children aged 12 through 20]; *Hansen* v. *State Board of Equalization,* 43 Cal.App.2d 176 [110 P.2d 453] [off-sale premises near school and church in residential community where no licensed premises exist].)

The instant case seemingly would fall within the second category of cases, since the premises' proximity to the university was coupled with such additional factors as the age and past "exuberance" of the Isla Vista and university population, the absence of any other licensed premises in the area, and the presence of a nearby restaurant which would enhance the likelihood that beer would be consumed near the campus. (Compare *Kirby* v. *Alcoholic Bev. etc. App. Bd., supra,* 261 Cal.App.2d 119, 127, with *Reimel* v. *Alcoholic Bev. etc. App. Bd., supra,* 255 Cal.App.2d 40, 49.)

In addition to cases which involve proposed premises in close proximity to schools or churches, there is a line of authority squarely holding that the Department may deny, suspend or revoke a license whenever it determines, on substantial evidence, that the premises might present, or have presented, a law enforcement problem. (See *Harris* v. *Alcoholic Bev. Con. Appeals*

*Bd.*, 212 Cal.App.2d 106, 118-119 [28 Cal.Rptr. 74]; *Torres* v. *Dept. of Alcoholic Bev. Control, supra,* 192 Cal.App.2d 541, 559; *Parente* v. *State Board of Equalization,* 1 Cal.App.2d 238, 245-246 [36 P.2d 437]; Bus. & Prof. Code, § 23958 ["The department further may deny an application for a license if issuance of such license would tend to create a law enforcement problem . . ."]; Bus. & Prof. Code, § 23987 [requiring immediate transmittal of a copy of license applications to sheriff or chief of police].)

The Board and real party Schaeffer take the position that the evidence failed to establish that the civil disturbances and campus disruptions testified to by Sheriff Webster were in any way attributable to the consumption of beer or other alcoholic beverages; these parties suggest that Webster's testimony regarding the relationship between crime and intoxication and the likelihood that the premises might aggravate police problems was mere "opinion" testimony and wholly speculative. ■ As the cases make clear, however, the Department's role in evaluating an application for a license to sell alcoholic beverages is to assure that the public welfare and morals are preserved "from probable impairment in the future." (*Harris* v. *Alcoholic Bev. Con. Appeals Bd., supra,* 212 Cal.App.2d 106, 119.) Of necessity, in appraising the likelihood of future harm to the public welfare, the Department must be guided to a large extent by past experience and the opinions of experts. As stated in *Kirby* v. *Alcoholic Bev. etc. App. Bd., supra,* 261 Cal.App.2d 119, 129, "Complaint is made that some of the evidence is opinion testimony purely speculative and conjectural, i.e., the litter problem, and the likelihood of consumption of alcoholic beverages around the hamburger stand, *but it should be borne in mind that the proposed business is not yet in operation and the attempt to assess its future impact on public welfare and morals must be and is based on experience, sound reason and evidence in the record.* (See *Iscoff* v. *Police Com.,* 222 Cal.App.2d 395, 410, 411 . . . in which similar opinions and other statements constituted sufficient evidence upon which the board [the board of permit appeals] in the exercise of its sound discretion made its order of denial.)" (Italics added.)

The Board emphasizes the fact that following the conclusion of the hearings, but prior to the Department's decision, as previously noted, newly elected Sheriff Carpenter advised the Department that he would not protest Schaeffer's application. Even were we to assume that Carpenter's letter constituted the announcement of a formal change of official policy, at least on the part of the head of one police agency, regarding the issuance of licenses in Isla Vista, nothing in the law thereby permitted or required the Department to disregard its constitutional responsibilities to pass upon the evidence before it and determine the effect upon public welfare and

morals. ■ Sheriff Webster's testimony had, of course, an independent significance apart from merely declaring the policy of the Santa Barbara County Sheriff's Department—it constituted *evidence,* based upon Webster's 25 years' prior experience as a law enforcement officer in the area, that the granting of a license to Schaeffer could aggravate an existing law enforcement problem and thus be contrary to the public welfare. The subsequent statement by his successor in office that he would not oppose issuance of the license could not and did not depreciate the evidentiary value of Webster's testimony.

Schaeffer's application was filed, and the Department's decision made, at a time when the Isla Vista disturbances were painfully fresh. Whether or not the Department might now take a different view toward a renewed application based upon present conditions in the area, we are not entitled to speculate. That decision must rest with the Department and not with the Board or this court. Since the Department was justified in denying Schaeffer's 1970 application on the evidence placed before it, the Board erred in reversing the Department's decision.

The decision of the Board is hereby reversed and the decision of the Department affirmed.

Wright, C. J., McComb, J., and Sullivan, J., concurred.

**PETERS, J.**—I dissent.

I disagree with the majority's conclusion that there is substantial evidence supporting the conclusion that the existence of the licensed premises could cause or aggravate a police problem, or could interfere with the residents' quiet enjoyment of their property, and consequently would be contrary to public welfare and morals.

The basic rule regarding the discretion of the Department of Alcoholic Beverage Control to deny a liquor license is well-established and perhaps best stated in *Schaub's Inc.* v. *Dept. Alc. Bev. Control,* 153 Cal.App.2d 858, 865 [315 P.2d 459]: "While the department is vested with the constitutional power to deny in its discretion any specific liquor license if it determines *for good cause* that granting the license would be contrary to public welfare and morals, in so determining, the department performs a quasi-judicial function similar to local administrative agencies. [Citations.] But, 'The board's discretion under section 22 [of the California Constitution], however, is not absolute but must be exercised in accordance with the law, and the provision that it may revoke a license *"for good cause"* necessarily implies that its decisions should be based on sufficient evidence

and that it should not act arbitrarily in determining what is contrary to public welfare or morals' [Citations.]" (Italics in original.)

The hearing examiner made several findings of fact reflecting conditions in the Isla Vista area and recommended that the license be granted. The department adopted the findings but concluded that: "1. The premises sought to be licensed are in a residential area where normal operation would interfere with the quiet enjoyment of their property by the residents thereof; [¶] 2. Issuance of the license would aggravate an existing police problem . . . :"

The first conclusion cannot be sustained on the record before us for several reasons.

It is not supported by the findings of fact made by the hearing officer which were adopted by the department. The conclusion is based not on the proximity of the proposed establishment to the university campus but on its proximity to a residential area. Yet the overwhelming evidence establishes as a matter of law that this was a business district, with a large commercial shopping center strategically located to serve Isla Vista's population of over 12,000. It is within this shopping center that the applicant, Schaeffer (the real party in interest) seeks to establish a small retail outlet for the sale of beer and wine for consumption off the premises. The proximity of the store to the residential area is similar to the proximity of liquor stores in most suburban shopping centers, where for obvious economic reasons they will be successful in terms of profit to the owner and convenience to customers. Even in larger cities, hundreds of licenses have been issued where there is a much closer proximity between liquor stores located in a business district and nearby residential areas. It would seem that any attempt to deny the license based on the potential interference with the quiet enjoyment of residential property is not supported by the record.

In basing their decision on proximity of the proposed establishment to the campus community and the university itself, the majority have departed from the department's conclusion that the issuance of the license would interfere with the quiet enjoyment of residential property. Since the department did not rely on proximity to the campus it is improper for the majority to rely upon such proximity.

Finally, in this connection, the majority in erroneously relying on proximity to the university and the campus community and not on proximity to nearby residential areas, cite cases dealing with proximity to churches and schools. No cases of denial of a license are cited which are based on proximity to a residential area.

Even in cases of proximity to schools and churches the department's denial of a license has been reversed in the absence of a clear showing of potential harm. (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.*, 55 Cal.2d 867, 876 [13 Cal.Rptr. 513, 362 P.2d 337]; *Reimel* v. *Alcoholic Bev. etc. App. Bd.*, 255 Cal.App.2d 40, 45 [62 Cal.Rptr. 778].) As the majority correctly point out, cases agree that "mere proximity to schools or .churches may not constitute good cause for denial of a license," but that "proximity to a church or school coupled with some additional evidence disclosing a potential threat to the public welfare or morals has been held sufficient to justify denial of a license." These cases as the majority also recognize find the needed additional evidence in such matters as use of the school or church by very young children, but they are clearly inapposite here because Isla Vista has a lesser percentage of young children than almost any other area in the state. Thus none of the cases cited by the majority are applicable to the instant set of facts.

A close reading of the record compels me to conclude that there is no substantial evidence showing that the issuance of an off-sale beer and wine license in a commercial area with a surrounding residential area of a population of more than 12,000 would interfere with the quiet enjoyment of that residential property.

In finding substantial evidence to concur with the department's second conclusion for denying the license, that the proposed establishment would cause or aggravate a police problem, the majority improperly rely upon the testimony of ex-Sheriff James Webster. When application was made by Schaeffer for the license, Webster, then sheriff, protested the application. He was, however, not reelected to another term. When the department's decision was issued John Carpenter was Sheriff of Santa Barbara County. Shortly after taking office but before the decision was issued he wrote to the department advising it that he would not protest the application. Nevertheless, the decision denied the application based upon the police problem in the area as described by Webster, and to a lesser extent the possible interference with the quiet enjoyment of the property owned by the surrounding businessmen and residents.

I believe that the testimony of Webster should have been given little if any weight. The department and the majority of this court in reaching similar conclusions have misplaced their reliance on Webster's testimony which provides little if any direct, relevant evidence let alone substantial evidence indicating that the off-premises sale of beer and wine would cause or aggravate a police problem.

In his protest filed against the issuance of the license, Webster argued

that if the license were granted, "it will tend to create a policing problem because of its proximity to the Santa Barbara campus of the University of California and the recent civil disturbances which occurred in this area."

The civil disturbances and campus disruptions testified to by Webster were in no way attributable to any licensed premises, alcoholic beverages or the issuance of a beer and wine license to Schaeffer. It bears emphasis that at the time of the disruptions there was not a single alcoholic beverage license in the entire community of Isla Vista. The disruptions were directly attributable to campus problems, and to the students' reaction to the increased offensive in Vietnam and the announcement of President Nixon's policy to invade Cambodia with United States ground troops and air support. It is illogical to assume as Webster did that the presence or non-presence of beer and wine had any effect on the disturbances of the spring of 1970. In fact, the evidence shows no relation between beer and wine sales in the area and the past violence, as no license to sell beer or wine existed in Isla Vista when the violence referred to occurred. Yet even if an off-sale license were issued no evidence was presented indicating that this would foment violence or aggravate existing problems. It is a matter of public record that the department has, in fact, granted applications for licenses to premises located within the immediate vicinity of several campus communities.

One need only walk the streets of Berkeley—the so-called "hotbed or birthplace" of student violence and disruption—to observe countless beer parlors, restaurants, various food shops, and super markets selling beer and wine of the same proof the real party in interest intends to sell. And yet no link has ever been shown between the existence of these establishments and the disturbances and disruptions which periodically occur there. On the other hand, there are numerous universities and colleges in this state where there have not been any disruptions although wine and beer and perhaps hard liquor are readily available at licensed premises near the school. There is nothing in the record to significantly connect the disruptions at Isla Vista with the sale or consumption of beer and wine. In this connection, Webster estimated that of the 700 to 800 persons arrested in the disruptions approximately 10 arrests involved alcohol.

Webster testified that in his opinion at least 50 to 60 percent of the people arrested were under the influence of intoxicating liquors and that Isla Vista has the highest crime rate in the county.

He indicated that no statistical information was available and none was presented at the hearing. He further testified that no figures were available as to the correlation between intoxication and crime in the Isla Vista area.

There was no showing that the issuance of a license to sell beer and wine in a high crime area increased the crime rate. Thus, his testimony was pure speculation and conjecture without any support or factual basis.

Nothing in Webster's testimony links the presence of alcohol to the so-called "high rate of crime" and nothing in his testimony indicates that the existence of an off-sale licensed establishment would at present adversely affect that crime rate.

To the contrary, if any inference is permissible as to the correlation of a licensed beer and wine off-sale establishment and the high-crime rate, the record points in the direction that there is an inverse correlation. The record before us reflects that the highest crime rate in the county exists in the one area in the county where there is no such establishment. The lower crime rate areas in the county are the ones where licenses are permitted. I would be very reluctant to draw the inference that crime can be reduced by permitting off-sale establishments in Isla Vista, but such an inference on the basis of the record before us would seem more reasonable than the one the majority seem to draw, namely, that the presence of licensed premises increases the crime rate.

On cross-examination it was pointed out to Webster that several nearby licensed premises were trucking alcoholic beverages into Isla Vista and he was asked what was the difference, from a standpoint of law enforcement, between having beer delivered into the area from without and the licensing of Mr. Schaeffer's establishment. Webster testified: "Well, of course, if there wasn't an establishment in the Isla Vista area, it would eliminate the possibility of it being broken into and liquor or beer taken and people furnishing themselves in this manner, or if there was a situation develop [sic], such as Isla Vista 1, 2, or 3, that the Highway Patrol would set up road blocks which would, in essence, cut down or even eliminate the possibility of bringing in liquor from the outside."

To premise a denial of a license on such a basis would be a manifest abuse of discretion.

Every area of high population density such as a campus community or downtown core-area will have a somewhat higher crime rate than the outlying suburbs. If this line of reasoning were applied statewide, then off-sale licenses would be necessarily denied to any applicant who engaged in business in any area of the state where the crime rate was above average. The department and the majority have cited no authorities which would permit such an arbitrary denial of an off-sale license.

I conclude that to deny the license because of a "police problem" based upon one man's testimony is misplaced reliance and that testimony in the

instant case should not provide substantial evidence to support such an erroneous conclusion.

The overwhelming evidence shows and the hearing examiner and the department found:

"10. The people who actually reside in Isla Vista, the University population, and the University administration are overwhelmingly in favor of the application for the license.

"11. The business interests and the local community and service organizations are preponderantly in favor of the application."

It is clear that those who are most directly concerned with the question whether beer and wine should be sold in Isla Vista favored issuance of the license. Denial of the license will not mean that beer and wine will not be consumed in Isla Vista; the denial means only that obtaining the beverages will be made inconvenient; the residents will continue to resort to delivery by retailers outside the community. To impose this inconvenience as a punishment upon the residents of the community because some engaged in the disruptions appears to me to be the kind of bureaucratic pettiness which undermines confidence in all of our governmental institutions. I would hold that the department's decision is not supported by the record and that the decision was correctly reversed by the appeals board.

Tobriner, J., and Mosk, J., concurred.

Respondent's petition for a rehearing was denied August 2, 1972. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.