[L. A. No. 22697.   In Bank.   Apr. 28, 1953.]

ALFRED K. WEISS et al., Appellants, v. STATE BOARD OF EQUALIZATION et al., Respondents.

Riedman & Silverberg and Milton H. Silverberg for Appellants.

Edmund G. Brown, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondents.

CARTER, J.—Plaintiffs brought mandamus proceedings in the superior court to review the refusal of defendant, State Board of Equalization, to issue them an off-sale beer and wine license at their premises and to compel the issuance of such a license. The court gave judgment for the board and plaintiffs appeal.

Plaintiffs filed their application with the board for an off-sale beer and wine license (a license to sell those beverages to be consumed elsewhere than on the premises) at their premises where they conducted a grocery and delicatessen business. After a hearing the board denied the application on the grounds that the issuance of the license would be contrary to the "public welfare and morals" because of the proximity of the premises to a school.

According to the evidence before the board, the area concerned is in Los Angeles. The school is located in the block bordered on the south by Rosewood Avenue, on the west by Fairfax Avenue, and on the north by Melrose Avenue—an 80-foot street running east and west parallel to Rosewood and a block north therefrom. The school grounds are enclosed by a fence, the gates of which are kept locked most of the time. Plaintiffs' premises for which the license is sought are west across Fairfax, an 80-foot street, and on the corner of Fairfax and Rosewood. The area on the west side of Fairfax, both north and south from Rosewood, and on the east side of Fairfax south from Rosewood, is a business district. The balance of the area in the vicinity is residental. The school is a high school. The portion along Rosewood is an athletic field with the exception of buildings on the corner of Fairfax and Rosewood across Fairfax from plaintiffs' premises. Those buildings are used for R.O.T.C. The main buildings of the school are on Fairfax south of Melrose. There are gates along the Fairfax and Rosewood sides of the school but they are kept locked most of the time. There are other premises in the vicinity having liquor licenses. There are five on the west side of Fairfax in the block south of Rosewood and one on the east side of Fairfax about three-fourths of a block south of Rosewood. North across Melrose and at the corner of Melrose and Fairfax is a drugstore which has an off-sale license. That place is 80 feet from the northwest corner of the school property as Melrose is 80 feet wide and plaintiffs' premises are 80 feet from the southwest corner of the school property. It does not appear when any of the licenses were issued, with reference to the existence of the school or otherwise. Nor does it appear what the distance is between the licensed drugstore and any school buildings as distinguished from school grounds. The licenses on Fairfax Avenue are all farther away from the school than plaintiffs' premises.

Plaintiffs contend that the action of the board in denying them a license is arbitrary and unreasonable and they particu-

larly point to the other licenses now outstanding on premises as near as or not much farther from the school.

The board has the power "in its discretion, to deny . . . any specific liquor license if it shall determine for good cause that the granting . . . of such license would be contrary to public welfare or morals." (Cal. Const., art. XX, § 22.) ■ In exercising that power it performs a quasi judicial function similar to local administrative agencies. (*Covert* v. *State Board of Equalization*, 29 Cal.2d 125 [173 P.2d 545]; *Reynolds* v. *State Board of Equalization*, 29 Cal.2d 137 [173 P.2d 551, 174 P.2d 4]; *Stoumen* v. *Reilly*, 37 Cal.2d 713 [234 P.2d 969].) ■ Under appropriate circumstances, such as we have here, the same rules apply to the determination of an application for a license as those for the revocation of a license. (*Fascination, Inc.* v. *Hoover*, 39 Cal.2d 260 [246 P.2d 656]; Alcoholic Beverage Control Act, § 39; Stats. 1935, p. 1123, as amended.) ■ In making its decision "The board's discretion . . . however, is not absolute but must be exercised in accordance with the law, and the provision that it may revoke [or deny] a license 'for good cause' necessarily implies that its decisions should be based on sufficient evidence and that it should not act arbitrarily in determining what is contrary to public welfare or morals." (*Stoumen* v. *Reilly*, *supra*, 37 Cal.2d 713, 717.)

■ Applying those rules to this case, it is pertinent to observe that while the board may refuse an on-sale license if the premises are in the immediate vicinity of a school (Alcoholic Beverage Control Act, *supra*, § 13) there is no such provision or regulation by the board as to off-sale licenses. Nevertheless, proximity of the licensed premises to a school may supply an adequate basis for denial of a license as being inimical to public morals and welfare. (See *Altadena Community Church* v. *State Board of Equalization*, 109 Cal.App.2d 99 [240 P.2d 322]; *State* v. *City of Racine*, 220 Wis. 490 [264 N.W. 490]; *Ex parte Velasco*, (Tex.Civ.App.) 225 S.W. 2d 921; *Harrison* v. *People*, 222 Ill. 150 [78 N.E. 52].)

The question is, therefore, whether the board acted arbitrarily in denying the application for the license on the ground of the proximity of the premises to the school. No question is raised as to the personal qualifications of the applicants. ■ We cannot say, however, that it was unreasonable for the board to decide that public welfare and morals would be jeopardized by the granting of an off-sale license at premises

within 80 feet of some of the buildings on a school ground. As has been seen, a liquor license may be refused when the premises, where it is to be used, are in the vicinity of a school. While there may not be as much probability that an off-sale license in such a place would be as detrimental as an on-sale license, yet we believe a reasonable person could conclude that the sale of any liquor on such premises would adversely affect the public welfare and morals.

■ Plaintiffs argue, however, that assuming the foregoing is true, the action of the board was arbitrary because there are other liquor licensees operating in the vicinity of the school. All of them, except the drugstore at the northeast corner of Fairfax and Melrose, are at such a distance from the school that we cannot say the board acted arbitrarily. It should be noted also that as to the drugstore, while it is within 80 feet of a corner of the school grounds, it does not appear whether there were any buildings near that corner, and as to all of the licensees, it does not appear when those licenses were granted with reference to the establishment of the school.

Aside from these factors, plaintiffs' argument comes down to the contention that because the board may have erroneously granted licenses to be used near the school in the past it must continue its error and grant plaintiffs' application. That problem has been discussed: ''Not only does due process permit omission of reasoned administrative opinions but it probably also permits substantial deviation from the principle of stare decisis. Like courts, agencies may overrule prior decisions or practices and may initiate new policy or law through adjudication. Perhaps the best authority for this observation is *FCC* v. *WOKO* [329 U.S. 223 (67 S.Ct. 213, 91 L.Ed. 204).] The Commission denied renewal of a broadcasting license because of misrepresentations made by the licensee concerning ownership of its capital stock. Before the reviewing courts one of the principal arguments was that comparable deceptions by other licensees had not been dealt with so severely. A unanimous Supreme Court easily rejected this argument: 'The mild measures to others and the apparently unannounced change of policy are considerations appropriate for the Commission in determining whether its action in this case is too drastic, but we cannot say that the Commission is bound by anything that appears before us to deal with all cases at all times as it has dealt with some that seem com-

parable.' In rejecting a similar argument that the SEC without warning had changed its policy so as to treat the complainant differently from others in similar circumstances, Judge Wyzanski said: 'Flexibility was not the least of the objectives sought by Congress in selecting administrative rather than judicial determination of the problems of security regulation. . . . The administrator is expected to treat experience not as a jailer but as a teacher.' Chief Justice Vinson, speaking for a Court of Appeals, once declared: 'In the instant case, it seems to us there has been a departure from the policy of the Commission expressed in the decided cases, but this is not a controlling factor upon the Commission.' Other similar authority is rather abundant. Possibly the outstanding decision the other way, unless the dissenting opinion in the second Chenery case is regarded as authority, is *NLRB* v. *Mall Tool Co.* [119 F.2d 700.] The Board in ordering back pay for employees wrongfully discharged had in the court's opinion departed from its usual rule of ordering back pay only from time of filing charges, when filing of charges is unreasonably delayed and no mitigating circumstances are shown. The Court, assuming unto itself the Board's power to find facts, said: 'We find in the record no mitigating circumstances justifying the delay.' Then it modified the order on the ground that 'Consistency in administrative rulings is essential, for to adopt different standards for similar situations is to act arbitrarily.' From the standpoint of an ideal system, one can hardly disagree with the court's remark. But from the standpoint of a workable system, perhaps the courts should not impose upon the agencies standards of consistency of action which the courts themselves customarily violate. Probably deliberate change in or deviation from established administrative policy should be permitted so long as the action is not arbitrary or unreasonable. This is the view of most courts.'' (Davis, Administrative Law, § 168; see also Parker, Administrative Law, pp. 250-253; 73 C.J.S., Public Administrative Bodies and Procedure, § 148; *California Emp. Com.* v. *Black-Foxe M. Inst.*, 43 Cal.App.2d Supp. 868 [110 P.2d 729].) Here the board was not acting arbitrarily if it did change its position because it may have concluded that another license would be too many in the vicinity of the school.

The contention is also advanced that the neighborhood is predominantly Jewish and plaintiffs intend to sell wine to customers of the Jewish faith for sacramental purposes. We fail to see how that has any bearing on the issue. The wine

to be sold is an intoxicating beverage, the sale of which requires a license under the law. Furthermore, it cannot be said that wine for this purpose could not be conveniently obtained elsewhere.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellants' petition for a rehearing was denied May 21, 1953.