[L. A. No. 22903. In Bank. Apr. 2, 1954.]

TOSHIKUNI TAENAKA, Respondent, v. STATE BOARD OF EQUALIZATION et al., Appellants.

Edmund G. Brown, Attorney General, and Alexander Googooian, Deputy Attorney General, for Appellants.

James K. Mitsumori for Respondent.

CARTER, J.—The State Board of Equalization, respondent in mandamus proceedings in the superior court, appeals from a judgment of that court granting a peremptory writ of mandate ordering the board to restore to Taenaka, petitioner, an off-sale liquor license at his premises on East 103d Street in Los Angeles.

According to the findings, petitioner is a United States citizen of Japanese ancestry. He owns the above-mentioned premises, and in 1941, he held an off-sale liquor license at said premises regularly issued to him by respondent, and operated a liquor business thereunder. After the outbreak of the second World War and in May, 1942, respondent revoked and cancelled petitioner's license on the ground of his Japanese ancestry. In 1951, the Legislature added a section to the Alcoholic Beverage Control Act (Stats. 1935, p. 1123, as amended),* and pursuant thereto on September 4, 1951,

---

*"Any individual, who held a license under this act on December 7, 1941, and whose license was thereafter revoked because of the Japanese ancestry of the licensee, or surrendered, or was permitted to expire by such Japanese, may at any time within six months after the effective date of this section file an application for a similiar [sic] license, and the board shall issue such a license upon the payment of the current fee therefor. The provisions of Section 38f shall not apply to licenses issued to such persons. No license shall be issued pursuant to this section to a person who is not qualified to hold a license at the time of filing his application hereunder, and the issuance of such a license shall be subject to, the approval of the board and other provisions of this act. The acceptance of a license issued pursuant to this section shall constitute a release of any and all claims for damages, if any there be, which the person to whom the license is issued may have against the State by reason of the revoca-

petitioner applied to the board for a license. On November 15, 1951, the board, after hearing, granted the application and ordered the issuance of the license "provided no protests have been filed against the issuance of such license." At that time no protests had been filed. Thereafter, on November 26, 1951, protests were filed by a church, the Parent-Teachers Association, and John J. Hicks, president of South East Ministers' Alliance, on the ground that the premises were too close to a school and churches. At a meeting of the board on December 13, 1951, the matter of setting the protests for hearing was discussed in the presence of petitioner's counsel and Hicks. After some discussion in which one of the board members expressed his belief that there had been a fraud perpetrated on the board in the issuance of the license on November 15, 1951, because of petitioner's counsel's assurance at the hearing thereon that no protests had been filed, a resolution was adopted that petitioner be requested to deliver his license to the custody of the state liquor administrator, and if he refused, proceedings for revocation of the license be initiated. Thereafter the same board member suggested that as petitioner was going into military service the board keep custody of the license for a year. Petitioner's counsel said he would cooperate and recommended the procedure to his client but demanded a hearing on the protests. At his counsel's suggestion petitioner handed the license to the board. Hearings were held thereafter to consider the protests on the basis of petitioner's application for a license rather than as a basis for its revocation. All of the protests were withdrawn except that of Hicks which was on behalf of a church which moved into the area 400 feet from petitioner's premises and next door to a liquor store shortly before the license was issued on November 15, 1951, but had not yet opened as a church. In March, 1952, the board "denied" petitioner's application for a license on the basis that it would be contrary to "public welfare and morals" because of the proximity of the premises to churches and a school.

---

tion, cancellation, or expiration of any license previously issued to or held by such person under this act; and provided further, that no such license or interest therein shall be subject to transfer by such person to any other transferee for a period of one year and thereafter only if such individual to whom such license has been restored hereunder has during such year as sole owner conducted the business operated under such license and personally, unless prevented by causes beyond his control, worked in the actual operation of said business." (Alcoholic Beverage Control Act, § 7.1, as added Stats. 1951, ch. 1457, § 1.)

The court found that petitioner had been forced to deliver his license to the custody of the board; that it had not acted pursuant to law and petitioner's license had not been revoked. It ordered the board to restore petitioner's license to him.

Petitioner's main contentions in support of the writ of mandate are: (1) That under section 7.1, *supra,* he was entitled to a license as a matter of right as long as the neighborhood was substantially the same with reference to churches and schools when he applied as when he had a license in 1941 and prior thereto; (2) that he did not lose his license by delivering it to the custody of the board because he was forced to make the delivery and that it did not constitute a revocation of it by the board; that where protests to the issuance of a license are filed after it is granted, as here, the board must bring and follow revocation proceedings as set forth in the act and this was not done.

■ Section 7.1 is a remedial provision in which the legislative purpose was to rectify what the Legislature felt was an injustice, that is, the deprivation of persons of Japanese ancestry of liquor licenses held by them upon the ground of their ancestry. The patent object of this legislation was to restore such licenses to their former owners at positions formerly occupied by them. While the first part of the section speaks of application by the person for a license the latter part mentions restoration of it, plainly indicating that the main purpose is that the former licensee shall be restored to his former status. This is further evinced by the provision that states a license "shall" be issued to him upon the payment of the "current fee therefor," and that section 38f of the act shall not apply to such licenses. ■ That section declares it to be for the public welfare and morals to limit the number of licenses in a given area. Plainly the section (7.1) would not accomplish its purpose if that limitation applied to those licenses because in most localities the quota of licenses would have been filled since the revocation in 1941 and 1942 of licenses held by those with Japanese ancestry. There would be no room for any more and hence very few, if any, restorations could be made. The same is true in regard to the character of the neighborhood in which the license is sought with reference to schools and churches. If the license is to be restored, and that is the declared policy of the section, then restoration should be effected where the neighborhood has remained substantially the same as when the license was revoked. If there has been no substantial

change then restoration follows automatically. That is the plain intent of section 7.1, *supra*. While it is provided in the section that the issuance of a license shall be subject to the rest of the act and the approval of the board, the rest of the section and its declared purpose show that it deals with matters other than the character of the neighborhood in which the licensee proposes to operate a liquor store under his license.

Here there is no question of petitioner's qualifications and it is clear that there had been no substantial change in the neighborhood at the time of his application as compared with the time his license was revoked. Churches and schools were in the vicinity at all times and most of the time since 1941 a license has been held by the occupant of his premises. One church had taken some steps to locate in the vicinity, but had not yet become established and its proposed location is next door to a liquor store. It is true, as pointed out by respondent, an additional license has been granted to premises in the neighborhood, but as heretofore mentioned, that is not a factor to be considered under the express wording of section 7.1, *supra*. We conclude, therefore, that the trial court's judgment was correct in determining that the board acted arbitrarily and abused its discretion in refusing to issue petitioner a license or in refusing to deliver back to him the license issued on November 15, 1951.

Petitioner urges that where a license is issued and thereafter protests to its issuance are filed, the only proper steps are for proceedings to revoke the license, and therein the protests are considered as the complaint for revocation (Alcoholic Beverage Control Act, § 39); that such was the case here because the license was issued on November 15, 1951, and the protests were filed thereafter; that the procedure under section 39 was not followed; (what was done has heretofore been indicated) that he was coerced by the board in delivering the issued license to its custody and continuing with the improper proceedings and thus he did not waive his right to complain. Respondent contends that petitioner was not coerced, and has waived and is estopped to complain of the procedure followed. No doubt the procedure followed by the board was irregular and it should be noted that there was no occasion for it, in effect, to threaten petitioner with revocation because of alleged false representations at the hearing leading to the issuance of the license on November 15, 1951. The only representation of any consequence made, was

that no protests to the issuance of the license had been filed. That was true. In view, however, of the result reached, that is, that petitioner is entitled to a license, it becomes unnecessary to pass upon those contentions. Presumably the license issued on November 15, 1951, was still in the custody of the board, and while his "application" was later "denied" after the subsequent hearings, there has been no order revoking it. But even if we consider that he surrendered it, then he is entitled to have a new one issued.

The judgment is affirmed.

Gibson, C. J., Traynor, J., and Spence, J., concurred.

SHENK, J.—I dissent. Under section 22 of article XX of the Constitution as amended in 1934 the State Board of Equalization has the "exclusive power to license" the "sale of intoxicating liquors in this State" and has "the power, in its discretion, to deny or revoke any specific liquor license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals." The majority opinion correctly states that "the board 'denied' petitioner's application for a license on the basis that it would be contrary to 'public welfare and morals' because of the proximity of the premises to churches and a school."

Whatever may have theretofore transpired it is stated and conceded by the majority that the proceedings before the board were conducted on the basis of an application by the petitioner for a license and a hearing thereon in the presence of protests rather than on the basis of the revocation of a license theretofore granted. The question of the discretion of the board in denying the license is in the very heart of the whole proceeding. The evidence before the board was abundantly sufficient to support the conclusion of the board that the granting of the license would be contrary to public welfare and morals. There is no evidence that the board acted arbitrarily or capriciously. The District Court of Appeal of the Second Appellate District, Division 2, reversed the judgment herein relying largely on the case of *Weiss* v. *State Board of Equalization* (not mentioned in the majority opinion), wherein this court in April, 1953 (40 Cal.2d 772 [256 P.2d 1]), outlined the discretionary powers of the board and upheld its action in denying a liquor license on premises in the proximity of a public school. For the foregoing reasons and the additional reasons stated in the opinion of the District Court of Appeal written by Mr. Justice

Fox and reported in volume 258 of the Pacific Reporter beginning at page 1079 I would reverse the judgment and thus uphold the action of the board in denying the license.

Edmonds, J., and Schauer, J., concurred.

Appellants' petition for a rehearing was denied April 28, 1954. Shenk, J., Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.