[Civ. No. 32502.   Second Dist., Div. One.   Apr. 15, 1968.]

EDWARD J. KIRBY, as Director, etc., Petitioner, v. ALCO-
HOLIC BEVERAGE CONTROL APPEALS BOARD,
Respondent; CIRCLE K CORPORATION et al., Real
Parties in Interest.

Thomas C. Lynch, Attorney General, and A. Wallace Tashima, Deputy Attorney General, for Petitioner.

Leo K. Gallant for Respondent.

Wien, Thorpe & Sutherland and Henry Wien for Real Parties in Interest.

LILLIE, J.—The Circle K Corporation applied to the Department for an off-sale beer and wine license; protests were filed by the El Monte City Council, Byron E. Thompson as superintendent, El Monte School District, Mrs. Bette Minick, president, Charles E. Godley Elementary School P.T.A. and Ralph N. Klein, a resident of the area. The hearing officer made a series of nine findings, recommended that the protests be sustained and determined that the proposed premises are located within the immediate vicinity of a school and the issuance of the license for use at the premises would be contrary to public welfare and morals. The proposed decision was adopted by the Department; petition for reconsideration was denied and applicant appealed to the Alcoholic Beverage Control Appeals Board. The Board reversed the decision of the Department on the ground that the record does not contain sufficient substantial evidence to support the finding that the issuance of the license would be contrary to public welfare or morals. Review is before this court on petition of the Department. (§ 23090, Bus. & Prof. Code.) ██ The issue is whether the Department's ultimate finding that issuance of the license would be contrary to public welfare or morals is supported by substantial evidence in the light of the whole record.

Under section 23090, Business and Professions Code, this is the second successive level of review; the scope of review at each level is the same and consists of the application of the substantial evidence rule to the original record of the Department. (Cal. Const., art. XX, § 22; §§ 23084, 23090.2, Bus. & Prof. Code; *Martin* v. *Alcoholic Beverage etc. Appeals Board,* 52 Cal.2d 238, 245-246 [340 P.2d 1]; *Harris* v. *Alcoholic Beverage Control Appeals Board,* 212 Cal.App.2d 106, 113 [28 Cal.Rptr. 74]; *Reimel* v. *Alcoholic Beverage Control Appeals Board,* 255 Cal.App.2d 40, 43 [62 Cal.Rptr. 778].) Thus,

it is our function to determine whether the findings of the Department are supported by substantial evidence (§ 23090.2, Bus. & Prof. Code) ; before us is the entire record. (§ 23090.1, Bus. & Prof. Code.)

■ ''The Constitution of California confers upon the Department of Alcoholic Beverage Control 'the power, in its discretion, to deny . . . any specific liquor license if it shall determine for good cause that the granting . . . of such license would be contrary to public welfare or morals . . .' (Cal. Const., art. XX, § 22). The discretion thus vested is not absolute, but must be exercised in accordance with law ; and the provisions that the department may deny 'a license . . . necessarily implies that its decisions shoould be based on sufficient evidence and that it should not act arbitrarily in determining what is contrary to public welfare or morals.' . . . In considering the sufficiency of the evidence issue the court is governed by the substantial evidence rule . . ; any conflict in the evidence is resolved in favor of the decision; and every reasonably deducible inference in support thereof will be indulged. [Citations.] ■ In determining whether the decision of the department is arbitrary, its action is measured by the standard set by reason and reasonable people (*Weiss* v. *State Board of Equalization, supra,* 40 Cal.2d 772, 775-776 [256 P.2d 1] ; . . .), bearing in mind that such a standard may permit a difference of opinion upon the same subject (*Bowman* v. *Alcoholic Beverage etc. Board,* 171 Cal. App.2d 467, 471 [340 P.2d 652]) ; and the court may not substitute a decision contrary to that made by the department, even though such decision is equally or more reasonable, if the determination by the department is one which could have been made by reasonable people. . . . ■ The department and not the court determines whether 'good cause' exists for denying a license upon the ground that its issuance would be contrary to public welfare or morals [citations] ; the court determines whether or not the department acted arbitrarily in making its decision; if the decision is without reason under the evidence, the action of the department is arbitrary, constitutes an abuse of discretion, and may be set aside ; but where the decision is the subject of a choice within reason, the department is vested with the discretion of making the selection which it deems proper, its action is within the scope of a valid exercise of the constitutionally conferred discretion, and the court may not interfere therewith.'' (*Torres* v. *Department of Alcoholic Beverage Control,* 192 Cal.App.2d 541, 544-546 [13 Cal.Rptr. 531].)

Circle K Corporation, a Texas corporation managing a chain of 249 convenience-type markets, 20 in California, entered into a 20-year lease providing for the construction of a building on a vacant lot 100 feet by 150 feet on the northeast corner of Arden Drive and Lower Azusa Road in El Monte, 150 feet north of the intersection. The building, 45 by 60 feet, is to be set back 72 feet from the street. Applicant will operate a self-service drive-in grocery and delicatessen whether or not the license issues. The building will be located on the south side of, and front, Arden Drive which is 80 feet wide. Parking will be provided for 14 cars. Lower Azusa Road is heavily traveled; Arden Drive has medium traffic; a signal at the intersection controls traffic and a crossing guard takes children across Arden Drive and Lower Azusa Road. There are no curbs, sidewalks or street lighting on the intersecting streets. Applicant intends to construct a walk, curb and gutter in front of the proposed building.

Service stations occupy the northeast and southeast corners of the intersection of Arden Drive and Lower Azusa Road; the service station on the northeast corner, immediately south of the proposed premises, is the only property between it and the Charles E. Gidley School which is on the southwest corner of the intersection. On the northwest corner is a Jack-In-The-Box hamburger stand, and from points along Lower Azusa Road are various commercial businesses. To the north of Lower Azusa Road the area is solid residential; to the north and west of Arden Drive the area is generally residential; to the south of Lower Azusa Road it is mixed retail commercial and manufacturing.

School facilities of the Charles E. Gidley School include kindergarten and elementary through eighth grade classrooms. The school grounds extend to the property lines fronting both Arden Drive and Lower Azusa Road. The straight line distance from the nearest classroom building to the proposed building is 360 feet, from the school grounds to premises building 280 feet, from school grounds to proposed premises 250 feet, from the nearest school entrance to the proposed premises 300 feet and from the nearest fence opening to premises building, 300 feet; and the walking distance from school property to the proposed premises is 320 feet and from the school entrance to the proposed building 392 feet.

The Gidley School is a K-8 school; attendance is approximately 775 pupils ranging from 5 through 14 years of age. Fifty-four percent of the children live to the north of Lower

Azusa Road and walk to school, 60 percent of whom live east of Arden Drive. Numerous children, according to the Department investigator, the majority, walk past the proposed premises to and from school; a check count on October 4 between 1:55 and 2:15 and 2:50 and 3:45 p.m. shows 21 children passed the premises on the same side of the street, 45 on the other side. Because of different schedules for different grades, split schedules, after-school and recreational use of the grounds, children walk by the proposed premises all day and well into the evening. The school day for the seventh and eighth grades is 8:45 a.m. to 3 p.m.; the day for kindergarten and primary children begins at 9 a.m., some children 10 a.m. due to a split reading program. Fourth, fifth and sixth graders arrive at 9 a.m. and leave at 3:10 p.m. Playground areas of the school are improved and used day and night; the school grounds are used from 6:30 to 9 p.m. for recreational purposes; the field is lighted for night use. Children as young as eight and nine walk to school in the evenings for recreational programs. In addition, there are organized after-school programs such as Scouts, Brownies, Youth Hut and dance classes. After school the auditorium is also used by nearby Catholic schools; activities last until 5:30 or 6 p.m.

Mr. Tubiola, principal, testified that one of the problems arising as a result of beer sales in the area is the use of school grounds for consumption of beer and wine on evenings and weekends by the younger men in the area; considerable litter results from empty beer bottles and cans and whiskey bottles which have been thrown on the ground and against the schools walls or windows; and the custodian has the problem of picking up the empty bottles. The Department investigator observed children standing around the Jack-In-The-Box hamburger stand where takeout food is served through a window, although they were not consuming any food. The president of the P.T.A. testified that the proximity of off-sale beer and wine to the hamburger stand serving take-out food across the street and directly across the street from the school would create a problem; those who would not otherwise consume alcoholic beverages at the hamburger stand might do so because of the convenience of the off-sale premises; and older youngsters who can conveniently buy beer at the proposed premises can go to Jack-In-The-Box where the younger teenagers are hanging out. The principal testified that junior high school students loiter at Jack-In-The-Box after school and he has to ''chase them out of there.'' The principal, president of

the P.T.A. and vice-principal testified that the proposed premises would create a traffic hazard due to lack of curbs and sidewalks elsewhere, the number of children passing the premises to and from school, the applicant's type of business and the parking lot behind it which would generate more car traffic. School administrative officials while maintaining a closed campus cannot prevent older students from leaving and going to the nearby liquor store for candy and to the hamburger stand. The school has difficulty in patrolling or policing youngsters at noon, many leaving the grounds to buy items such as candy and comic books and to frequent Jack-In-The-Box hamburger stand. Another attraction such as Circle K is felt to present a further "cutting" problem aggravated by worry over added traffic and additional crossing of busy streets. School authorities have found truants loitering near other nearby places of business. Such a situation created quite a problem in a similar district with a K-8 school (Potrero School).

Eleven licensed outlets, off-sale type, are located within a general radius of a mile from the school.[1]

The Department investigator in the district for a year knew of no trouble in El Monte due to the proximity of a grocery store to the school and recommended the license issue. Applicant's type of business is a "convenience," "spur-of-the-moment" market; it will carry a full line of grocery items except fresh cut meats and have 2,700 square feet of floor area; the hours will be from 7 a.m. to 11 p.m.; the wine will be stocked along a rear wall and on one side toward the rear will be a cooler box for produce, milk products and beer, a "Beer" sign appearing where beer is located; candy and gum will be located at the checkout counter and soda pop across the first aisle from the checkstand; 22 feet from the checkout stand will be magazines and paperback comic books;

---

[1](1) General off-sale package retail liquor store with delicatessen items 490 feet east on Lower Azusa Road;

(2) A supermarket with general off-sale liquor three blocks east on Lower Azusa Road;

(3) A liquor store 10 blocks northwest;

(4) A market with off-sale beer and wine 12 blocks west;

(5) A liquor store 10 blocks northwest on Lower Azusa Road;

(6) A market with off-sale beer and wine 10 blocks northwest;

(7) A market with beer and wine 12 blocks south;

(8) A market with off-sale beer and wine 7 blocks south;

(9) "Hi's" liquor and food 5 blocks east;

(10) Ealy's Liquor 6 blocks east; and

(11) "Market Basket" with off-sale beer and wine 14 blocks northeast.

the front of the store will be entirely glass; a coke machine will be located outside of the store in front, also an ice machine and a sign which includes "Beer." Applicant expects all beverage sales to constitute 14 to 16 percent of the total sales; it gives its employees two hours training in handling and packaging beer and wine and applicable laws; there will be no swinging gate or one-way gate and once inside the store customers can roam at will. Applicant does not solicit the attendance of minors—will sell no cigarettes to minors and keep all obnoxious and obscene material from its magazine racks; it will discourage loitering by teen-agers about the racks and will prevent the outside of the store from becoming a teen-age hangout.

The cases do not appear to be altogether consistent and each case seems to turn on its own factual situation, but as stated in *Martin* v. *Alcoholic Beverage etc. Appeals Board,* 55 Cal.2d 867, 880 [13 Cal.Rptr. 513, 362 P.2d 337] : ". . . the determing factor in upholding original decisions by the department was whether there was substantial evidence on which reasonable minds might differ as to whether the denying or granting of the license would or would not be contrary to public welfare and morals."

Recently this court decided *Reimel* v. *Alcoholic Beverage Control Appeals Board,* 250 Cal.App.2d 673 [58 Cal.Rptr. 788], a case containing similar factors. Applicants for an off-sale beer and wine license proposed to convert a grocery store to a delicatessen serving take-out food; the store sells candy, soft drinks, coke and gum and is patronized by approximately 20 children a day; the school, from kindergarten through sixth grade, starts at 8:30 a.m. and ends at 3:15 p.m.; after-school recreation continues until 5 p.m. The center of the store premises is 200 feet (airline) from the school playground and 426 feet from the school entrance; store hours are from 8 a.m. to 8:30 p.m.; wine and beer will be kept in the rear of the store and children are permitted to enter and buy take-out food. We held that the Department did not act arbitrarily or abuse its discretion in finding that the issuance of the license would be contrary to public welfare and morals based on evidence as to which there could be a reasonable difference of opinion. Nor is the factual situation herein dissimilar to *Weiss* v. *State Board of Equalization,* 40 Cal.2d 772 [256 P.2d 1], in which the refusal of the State Board of Equalization to issue an off-sale beer and wine license was upheld.

The Appeals Board and the applicant rely upon *Reimel* v.

*Alcoholic Beverage Control Appeals Board,* 255 Cal.App.2d
40 [62 Cal.Rptr. 778]. The court affirmed the Appeals
Board decision reversing the Department's denial of an off-
sale beer and wine license. Applicant Safeway Store was 400
feet from the main school entrance; it carried no exterior ads
on wine and beer; the school was an elementary school where
no child was over 12½ years old, and the area was exclu-
sively commercial for several blocks north and south. The
Department found that the applicant was located within the
immediate vicinity of the school; "But," the court said,
"this finding is not decisive: 'mere proximity' of the pro-
posed premises to a school or church is not, as a matter of law,
the 'good cause' which will constitutionally sustain denial of
a license." (P. 45.) The court held that there was not
sufficient evidence to support the Department's finding that
the granting of the license would be contrary to the public
welfare and morals; "Since, on the record before us, reason-
able minds cannot differ on this point, the decision of the
Department cannot be sustained." (P. 50.)

For the reasons the court in *Reimel* v. *Alcoholic Beverage
Control Appeals Board,* 255 Cal.App.2d 40 [62 Cal.Rptr.
778], distinguished *Weiss* v. *State Board of Equalization,* 40
Cal.2d 772 [256 P.2d 1], and *Reimel* v. *Alcoholic Beverage
Control Appeals Board,* 250 Cal.App.2d 673 [58 Cal.Rptr.
788], and found them not to be controlling, we distinguish
*Reimel* v. *Alcoholic Beverage Control Appeals Board,* 255
Cal.App.2d 40 [62 Cal.Rptr. 778]. Commenting on *Weiss,*
the court in *Reimel* (255 Cal.App.2d 40), said at page 49
[62 Cal.Rptr. 778], that the evidence in *Weiss* showed that
the proposed premises were 80 feet from a school building
directly across the street at the corner, the neighborhood was
partly residential and the school was a high school; "Within
the range of administrative discretion, the prospective prob-
lems involved with a beer and wine license 80 feet from a high
school building are conceivably more detrimental to public
welfare and morals than with a 115-foot—or 400-foot—dis-
tance between the license and a school where no child is more
than 12½ years old." The court in *Reimel* (255 Cal.App.2d
40 [62 Cal.Rptr. 778]) also distinguished *Reimel* v. *Alco-
holic Beverage Control Appeals Board,* 250 Cal.App.2d 673
[58 Cal.Rptr. 788]. There the neighborhood was wholly resi-
dential and the premises involved the sale of take-out food
and alcoholic beverages for consumption off the premises. At
page 49 the court (255 Cal.App.2d 40 [62 Cal.Rptr.

788]) stated: "The court expressly noted [*Reimel* 250 Cal. App.2d 673, 678 [58 Cal.Rptr. 788]] the consequent likelihood that alcoholic beverages would be consumed near the premises and within 200 feet of the school. No such factor appears in the present case."

As in *Reimel* v. *Alcoholic Beverage Control Appeals Board,* 250 Cal.App.2d 673 [58 Cal.Rptr. 788], and *Weiss* v. *State Board of Equalization,* 40 Cal.2d 772 [256 P.2d 1], where the neighborhood was wholly or partly residential, the area herein to the north is "solid residential" except for the commercial strip on Lower Azusa Road. Fifty-four percent of the children live to the north in the direction of the proposed premises, almost all within walking distance. Children walk past the proposed premises throughout the day because of the staggered, split attendance schedules and after-school use of the grounds for recreational purposes day and night. The school in *Reimel* v. *Alcoholic Beverage Control Appeals Board,* 255 Cal.App.2d 40 [62 Cal.Rptr. 778], was wholly elementary; the Gidley School has a substantial number of junior high school students through 14 years of age. (In *Reimel,* 250 Cal.App.2d 673 [58 Cal.Rptr. 788], the school had kindergarten through sixth grade classes.) The walking distance between the premises' entrance and the main entrance of Gidley School is 420 feet, and the proposed property and the school property 320 feet, and the straight line distance between entrances is 280 feet; in *Reimel,* 250 Cal.App.2d 673 [58 Cal.Rptr. 788], the walking distance was 426 feet, straight line distance 200 feet. In *Reimel,* 250 Cal.App.2d 673 [58 Cal.Rptr. 788], applicants sold take-out food, a substantial factor in the Department's denial of the license; the court found to be proper the Department's finding "that food and beverage, under the proposed operation of the store, might be consumed in the vicinity of the school." (P. 678.) There was no take-out food factor in *Reimel,* 255 Cal.App.2d 40 [62 Cal. Rptr. 778]. While the Circle K does not intend to serve take-out food, a Jack-In-The-Box hamburger stand selling take-out food, and in front of which children congregate, is across the street from the proposed premises and directly across the street from the school; this supports the inference that there is a likelihood that alcoholic beverages and food would be consumed near Gidley School. In addition, there is the testimony that the convenience of off-sale premises across the street might lead to the consumption of alcoholic beverages at the hamburger stand. In *Reimel,* 255 Cal.App.2d 40 [62

Cal.Rptr. 778], the Safeway had no exterior advertising of beer and wine; in the instant case a sign in front outside the proposed premises will contain the word "Beer." While the Safeway entrance did not front on the same street as the school and could not be seen from the school, here the front of the proposed construction will be entirely glass and front Arden Drive. Again, in *Reimel*, 255 Cal.App.2d 40 [62 Cal.Rptr. 778], the number of pupils was fewer (628), the age range younger (5-12½), the school and store hours shorter and the crossing guard maintained at the intersection away from the Safeway Store; here children walk past the proposed premises throughout the day because of staggered and split school schedules, the crossing guard is at the intersection of the school and the proposed premises and the use of school property is more extensive. Further and of significance is the fact that the applicant intends to sell items attractive to children—candy, soft drinks, gum, comic books, magazines and paperbacks—inside in the front of the store visible to school children through the glass front. Once inside a person may roam at will throughout the store. While applicant claims that it does not solicit minors and will discourage loitering and prevent the front of the store from becoming a teen-age hangout, it nevertheless will maintain in front of the exterior the most potent attraction to youngsters—a coke machine.

Complaint is made that some of the evidence is opinion testimony purely speculative and conjectural, i.e., the litter problem, and the likelihood of consumption of alcoholic beverages around the hamburger stand, but it should be borne in mind that the proposed business is not yet in operation and the attempt to assess its future impact on public welfare and morals must be and is based on experience, sound reason and evidence in the record. (See *Iscoff* v. *Police Com.*, 222 Cal. App.2d 395, 410, 411 [35 Cal.Rptr. 189], in which similar opinions and other statements constituted sufficient evidence upon which the board [the board of permit appeals] in the exercise of its sound discretion made its order of denial.)

In addition to the proximity of the proposed premises to the school, the evidence on the record before us presents a situation where at least there could be a reasonable difference of opinion as to whether the issuance of the license would be inimical to public welfare and morals. ■ "Since the power to determine the facts in licensing matters is vested in the department and not in the board, or the courts, a review of the action of the department is governed by the familiar

rule that where there is room for a reasonable difference of opinion v. ith respect to the correctness of a finding of fact, it will not be disturbed by the reviewing tribunal. Neither the board nor the courts may disregard or overturn a finding of fact of the Department of Alcoholic Beverage Control for the reason that it is considered that a contrary finding would have been equally or more reasonable.'' (*Bowman* v. *Alcoholic Beverage etc. Board,* 171 Cal.App.2d 467, 471-472 [340 P.2d 652] ; *Reimel* v. *Alcoholic Beverage Control Appeals Board,* 250 Cal.App.2d 673, 680 [58 Cal.Rptr. 788].) ▮ It is our view that the findings of the Department are supported by substantial evidence and that the Department did not act arbitrarily or abuse its discretion in denying the issuance of the license.

In reversing the decision of the Department the Appeals Board also held that ''to an extent this case represents a departure from department guidelines (policy) presently contained in section L 140 of its procedural manual. . . .''[2] Section L 140(g) and (h) appear to be no more than that delineated by the Appeals Board—general guidelines or policy— which have neither the intent nor the effect of limiting the Department's discretion. (See footnote 1, *Reimel* v. *Alcoholic Beverage Control Appeals Board,* 250 Cal.App.2d 673, 677 [58 Cal.Rptr. 788].) We agree with the Department's contention that the Appeals Board in stating ''In our opinion, the applicant qualifies under the department's standard,'' in effect substituted its discretion for that vested in the Department in attempting to bind the latter to its general guidelines making

[2]'' '(g) Off-sale premises over 200 feet

'' 'Generally, applications for package-store premises located more than 200 feet from any consideration point shall be denied only if both the Investigator and the person(s) in charge of the consideration point declare in writing that the licensing of the premises will have an adverse effect upon the functioning of the consideration point.

'' '(h) Grocery and drug stores

'' 'Some off-sale licenses, such as grocery and drug stores, sell alcoholic beverages as a side line incidental to the sale of their main lines of merchandise. Oftentimes, there is no exterior advertising of alcoholic bverages and very little interior advertising. This type of business would appear to be less objectionable in the vicinity of a consideration point than a package store. Generally, therefore, applications for drug, grocery, and similar stores shall be denied only if both the Investigator and the the person(s) in charge of the consideration point declare in writing that the licensing of the premises will have an adverse effect upon the functioning of the consideration point.'

''In our opinion, the applicant qualifies under the department's standard. . . .'' (Appendix ''B,'' p. 15.)

compliance therewith mandatory, and ignored the substantial evidence in support of the department's decision.

The order of the Appeals Board is reversed and the order of the Department is affirmed.

Wood, P. J., and McCoy, J. pro tem.,* concurred.

The petitions for a rehearing were denied May 14, 1968, and the petitions of the respondent and the real parties in interest for a hearing by the Supreme Court were denied June 11, 1968. Peters, J., was of the opinion that the petition should be granted.

*Retired judge of the superior court sitting under assignmenet by the Chairman of the Judicial Council.