[No. B007124. Second Dist., Div. One. Apr. 30, 1985.]

PHILIP A. DONIA et al., Petitioners, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Respondent;
SIMON C. HUEN et al., Real Parties in Interest.

COUNSEL

Steven A. Nissen, Ann Haskins, Overland Berke, Wesley, Gits, Randolph & Levanas and Alan L. Seltzer for Petitioners.

William R. MacDougall for Respondent.

No appearance for Real Parties in Interest.

OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Philip A. Donia, principal of the Vermont Avenue Elementary School, and other concerned citizens seek review of an order of respondent Alcoholic Beverage Control Appeals Board (board) reversing a decision of the Department of Alcoholic Beverage Control (department) which denied an

application by real parties in interest Simon C. Huen and Samuel A. and Paulina Quan for issuance of an off-sale beer and wine license. (Bus. & Prof. Code, § 23090.)

In February 1981, real parties applied for an off-sale beer and wine license for a convenience store, the La Colonia Market, located at 2715 South Vermont Avenue in Los Angeles. Protests were filed and an administrative hearing was held on February 17 and 28, 1983. The proposed decision of the administrative law judge recommended that the license application be granted. The department reviewed the entire record in the matter and denied the application on the ground that issuance of the license would tend to create or to aggravate an existing law enforcement problem and hence would be contrary to public welfare and morals. (Cal. Const., art. XX, § 22.) The board reversed the department's decision on the ground it was unsupported by the findings and the findings were unsupported by substantial evidence. (*Ibid.*)

The department petitioned this court for a writ of review, which Division Four thereof denied without opinion. Philip A. Donia and others separately petitioned for a writ of review, which this division granted.

STATEMENT OF FACTS

The La Colonia Market is located in a small shopping center on the northwest corner of 27th Street and Vermont Avenue. It shares a common parking lot with other businesses, including a doughnut shop which has four video arcade games, a record store which broadcasts music into the parking lot, a Pioneer Chicken takeout restaurant and a check cashing store. These businesses are a maximum of 75 feet from the market. The Vermont Avenue Elementary School is 180 feet, airline distance, north of the market. The market and shopping center lot are visible from the school playground and some classrooms. Children regularly remain in the area until 3 p.m., and the playground remains open until 4 p.m. Many children remain until that hour.

Approximately 1,700 children in grades K-6 attend the school. Seventy to 80 percent of these children walk to and from school; typically, at least 160 and possibly as many as 250 children walk directly in front of the small shopping center in which the market is located. Normally, 17 to 20 of these children enter the market and an additional 15 to 25 enter the doughnut shop.

Apart from the Vermont Avenue commercial strip, the surrounding area within a 1,000-foot radius is primarily a low income residential neighbor-

hood. The area has a crime rate more than 120 percent of the city average. There are 20 licensed off-sale liquor outlets within a general radius of one-half mile from the school. Seven of these are within one-quarter mile to the north or south of the school. Four are within one thousand feet and two of these are on the east side of Vermont Avenue within one block of the market.

In recent years, principal Philip A. Donia has received a number of complaints from employees of persons loitering around the school, some of whom appeared to be under the influence of alcohol. Within one year, Mr. Donia personally observed four incidents he considered serious in which intoxicated individuals came onto the school premises or loitered in close proximity to the school grounds, harassing students. One individual, a vagrant, had to be escorted from the school grounds frequently. The school grounds regularly are littered with alcoholic beverage containers, requiring the custodian to clean the perimeter each morning. On Monday mornings, the lunch area is littered with soft drink and alcoholic beverage containers. On several occasions, school employees had been subject to criminal attack on or near the school premises. Mr. Donia has no personal knowledge of whether any of these attacks were alcohol-related. As a result of this criminal activity and the presence of unauthorized persons on the school grounds, the school now has a locked campus. This, however, does not prevent the entry of unauthorized persons and the littering of the property with alcoholic beverage containers. The school grounds are used by the community evenings and weekends and young adults regularly climb the fence to play basketball.

Mr. Donia is concerned that the availability of liquor at the La Colonia Market will expose children congregating in the shopping center to the public consumption of alcohol. Although he is not presently aware of a specific problem with the public consumption of alcohol in the shopping center, he has observed evidence of alcohol use in the shopping center parking lot. On one occasion, when he returned to his automobile which was parked next to the doughnut shop, there was an empty beer can stuck on his radio antenna. Mr. Donia therefore feared adults would purchase liquor at the market and food from Pioneer Chicken, then consume these items in the parking lot.

The La Colonia Market offers for sale many items which would appeal to children, including a rack containing small games which is visible from outside the store. A large glass window at the entrance to the market permits easy visibility of the interior. The alcoholic beverage items would be offered for sale near the cash register and exit from the market, thereby placing them in close proximity to items enticing to children.

For the past 10 years, Los Angeles Police Sergeant David E. Brockhurst has worked exclusively in the central and southwest central portions of Los Angeles; the La Colonia Market is in the area of his primary responsibility. Over the years, Sergeant Brockhurst has observed the surrounding neighborhood directly as well as through reports from officers on the beat. As a result of his experience in responding to thousands of complaints regarding problems at liquor stores, he knows that the majority of public drunks obtain alcoholic beverages from off-sale sites and do their drinking in public areas adjacent to such sale sites. This is a violation of law. In addition, the close proximity of a fast food restaurant to an off-sale site increases the tendency of individuals to consume alcohol in public; i.e., to engage in criminal conduct. The particular layout of the shopping center in which the La Colonia Market is located would exacerbate this tendency, in that it provides a degree of privacy from scrutiny by patrolling officers.

Sergeant Brockhurst further noted that video arcades cause public safety problems and check cashing locations tend to be inordinantly attractive to robbers; the shopping center contains both. On the basis of his experience, Sergeant Brockhurst expressed the opinion that the addition of an off-sale outlet to the existing confluence of facilities in the shopping center would increase the likelihood of public consumption of alcoholic beverages and consequent crime-related problems. Sergeant Brockhurst had not personally investigated complaints of alcohol-related activity at Vermont Avenue Elementary School or at any other nearby school. His opinion did not reflect an official opinion of the Los Angeles Police Department, which had not formally protested the issuance of the off-sale license to La Colonia.

Carole Neuman (Neuman) participated in state-sponsored research into the correlation between the availability of alcoholic beverages, consumption and alcohol-related problems in over 200 California cities. Neuman is a doctoral candidate at the Alcohol Research Center of UCLA's Neuropsychiatric Institute. The results of the state-sponsored research indicated that increased felony and misdemeanor drunk driving arrests, cirrhotic deaths and public drunk arrests followed with increased availability of alcoholic beverages. In addition, the exposure of children to public drinking tends to legitimize that behavior in their eyes. The effect of such legitimization is reflected in a national survey which found a substantial number of 13-year olds already had moderate to severe alcohol dependence problems.

The area in which the La Colonia Market is located is represented by Los Angeles City Councilman Farrell. Constance H. Meadows, legislative aid to Councilman Farrell, meets regularly with neighboring community groups. In the course of those meetings, she has received numerous formal and informal complaints regarding loitering, public drunkenness, urination

and generally offensive behavior in the vicinity of off-sale sites immediately surrounding La Colonia.

As director of the joint educational project at the University of Southern California, Dr. Barbara Gardner places university students in nearby community schools. These students are afraid to walk to the Vermont Avenue Elementary School because of the harassment they endure from people who congregate and drink next to local stores selling liquor.

## CONTENTION

■ Petitioners contend the board exceeded its jurisdiction in determining that there was no substantial evidence issuance of an off-sale license to the La Colonia would be contrary to the public welfare and morals, in that the board substituted its view of the evidence for the reasonable view taken by the department. For the reasons set forth below, we agree.

## DISCUSSION

Preliminarily, we note that the department petitioned Division Four of this court for a writ of review in this matter on September 6, 1984. By its order dated October 17, 1984 (2d Civ. No. B007162), Division Four denied the petition as follows: "The petition for writ of review, filed September 6, 1984, has been read and considered and is denied." This prior denial has no bearing on our determination of the matter now before us.

■ The denial of a petition for a writ is not a final adjudication of the facts alleged in the petition where neither the denial nor the record discloses a reason therefor. (*Stearns* v. *Los Angeles City School Dist.* (1966) 244 Cal.App.2d 696, 706 [53 Cal.Rptr. 482, 21 A.L.R.3d 164]; *People* v. *Bergholm* (1960) 181 Cal.App.2d 778, 782 [5 Cal.Rptr. 608].) Such a denial will be accorded res judicata effect only where it appears the sole reason for denial must have been a decision on the merits. (*People* v. *Medina* (1972) 6 Cal.3d 484, 490-491 [99 Cal.Rptr. 630, 492 P.2d 686].) It does not so appear in the instant matter; neither Division Four's order nor the record discloses any reason for the denial and, inasmuch as it is possible the court simply exercised its discretion (Bus. & Prof. Code, § 23090) to deny review of a question it considered of little importance, we cannot say no conceivable reason for denial existed other than a determination on the merits. (*People* v. *Medina, supra,* 6 Cal.3d at p. 491.) Therefore, having granted the instant writ, we are not foreclosed from reaching the merits of the matter.

In reviewing a decision by the department, the board is limited to determining " 'whether the decision is supported by the findings, and whether the findings are supported by substantial evidence in the light of the whole record.' " (*Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1972) 7 Cal.3d 433, 436 [102 Cal.Rptr. 857, 498 P.2d 1105].) Neither the board nor a reviewing court "may ' "disregard or overturn a finding of fact of the Department . . . for the reason that it is considered that a contrary finding would have been equally or more reasonable." ' [Citation.] '[I]f it be conceded that reasonable minds might differ as to whether granting [a license] would or would not be contrary to public welfare, such concession merely shows that the determination of the question falls within the broad area of discretion which the Department was empowered to exercise.' [Citation.]" (*Id.,* at p. 436.) Accordingly, under the general principles of the substantial evidence rule, both the board and this court must view the evidence in the light most favorable to the department's decision, indulging in support thereof every reasonable deducible inference. (*Kirby* v. *Alcoholic Bev. etc. App. Bd.* (1968) 261 Cal.App.2d 119, 121-122 [67 Cal.Rptr. 628].)

Two cases previously decided by this division are instructive as to what sort of evidence possesses sufficient substantiality to sustain the department's determination that issuance of a license would be contrary to the public welfare and morals. In *Kirby, supra,* 261 Cal.App.2d 119, this division overruled the board's reversal of the department's denial of an off-sale license on the basis of the following factors: (1) the large enrollment of students at a nearby school; (2) the age of the students; (3) that the surrounding area was more residential than commercial; (4) the substantial number of students walking past the proposed premises; (5) the extended use of the school beyond normal school hours; (6) the closeness of the proposed premises to the school; (7) the students' ability to view the proposed premises readily from the school; (8) the ability to see inside the proposed premises readily from the outside; (9) the sale of items attractive to children near the entrance to the proposed premises; (10) the intent to have exterior advertising of alcoholic beverages; (11) the number of students patronizing the proposed premises; and (12) the presence of takeout food service close at hand. (*Id.,* at pp. 127-129.)

Most of the above factors favor the department's decision here as thoroughly as they did in *Kirby.* The enrollment of 1,700 students is more than two times greater than the enrollment considered significant in *Kirby;* nearly three times as many students (approximately the same or a greater percentage of total enrollment) pass the La Colonia; as in *Kirby,* a significantly higher percentage live in that general direction, usually within walk-

ing distance. In addition, as in *Kirby,* the instant school premises are available for use after normal school hours and after-hours recreational events lure students to the premises. The Vermont Avenue school is closer to the La Colonia Market than the school in *Kirby* was to the Circle K. Students can view the La Colonia from the school grounds and from certain classrooms. Students can see into the La Colonia through clear glass, a la *Kirby.* The children are nearly as old (ranging in age from five to thirteen versus five to fourteen). The La Colonia Market displays items enticing to children at the front entrance. The number of children patronizing the La Colonia is the same as that considered significant in *Kirby.* Except for the Vermont Avenue commercial strip, the surrounding area is primarily residential. Finally, the takeout food restaurant which is expected to lead to the combined consumption of liquor and food in the area is significantly closer than was the fast food service in *Kirby.*

Only one factor relied on in *Kirby* clearly weighs the other way in the instant matter—the La Colonia will have no exterior advertising of alcoholic beverages. That factor, however, is greatly outweighed by the factors enumerated above. In addition, there are three other areas of close factual similarity present in the instant matter and noted although not expressly relied on in *Kirby.* In both cases, there was a history of the littering of the school premises with alcoholic beverage containers; both campuses were closed, but that did not eliminate all problems of control; and there were numerous extant off-sale outlets relatively close to the school (here, 20 within a general one-half mile radius; in *Kirby,* 11 within a general one mile radius). In our view, these factors also favor denial of a license. Further, there is evidence here of specific alcohol-related problems on the school grounds other than extensive littering. Finally, there is considerable expert evidence of the recognized effects of off-sale outlets on public drinking, the associated police problems and the psychological effect of public drinking on children.

The board viewed much of the evidence relating to problems associated with the availability of liquor at off-sale outlets and the effect of fast food service on the public consumption of alcohol as merely conjectural and speculative. That spectre was also raised in *Kirby.* The court noted, "it should be borne in mind that the proposed business [of selling alcohol] is not yet in operation and the attempt to assess its future impact on public welfare and morals must be and is based on experience, sound reason and evidence in the record. [Citation.]" (261 Cal.App.2d at p. 129.) At the time of the hearing, the La Colonia, though operational, was not selling liquor. Hence, the overall future impact of such sale must be assessed here on the same bases utilized in *Kirby.*

*Reimel* v. *Alcoholic Bev. etc. App. Bd.* (1967) 250 Cal.App.2d 673 [58 Cal.Rptr. 788] lends further support to the department's decision. In *Reimel,* this division also overruled the board's reversal of a departmental denial, holding the following to be substantial evidence in support thereof: (1) the presence of takeout food on the premises; (2) the presence of items very attractive to children; (3) 20 child patrons per day; (4) after-school recreation on the school grounds; (5) approximately 200 airline feet distance from the proposed premises to the school; (6) students in grade K-6; and (7) the residential character of the surrounding area. If anything, the instant matter presents a stronger case for denial of a license than did *Reimel.*

In reversing the department, the board brushed over *Kirby* quickly, focusing on the inconsiderable differences rather than the considerable similarities, and did not discuss *Reimel* at all. Before this court, the board relies on *Board of Trustees* v. *Munro* (1958) 163 Cal.App.2d 440 [329 P.2d 765], stressing the perceived similarities between the instant matter and that case. The most noteworthy aspect of *Munro,* however, is that the court therein deferred to the discretion of the department in *granting* an off-sale license. Had the department so acted in the instant matter, the board's reliance on *Munro* might be well founded; it does not follow that it provides equal support for a determination that the department *abused* its discretion in *denying* a license.

It appears the board gave undue weight to the fact none of the school children in the instant matter could pass as old enough to purchase liquor. This assumes the possible availability of liquor to children is the only evil attending the issuance of a license to an off-sale outlet. Reason does not dictate that result; as empirical evidence demonstrates, the legitimization of public drinking in childish eyes is itself an evil.

The board also emphasized the present lack of problems associated with drinking in the shopping center, notwithstanding the presence of an off-sale outlet directly across the street. Yet the board failed to accord any significance to the fact that outlet is on the opposite side of Vermont Avenue—a very busy thoroughfare. Reasonable minds might well infer the heavy traffic could dampen the impulse to purchase alcohol for its consumption in the parking lot with food purchased in the shopping center. In any event, there is clear evidence that such activity does presently take place to *some* extent, in that Mr. Donia once returned to find an empty beer can impaled on his automobile radio antenna. It is not illogical to infer that such activity would escalate substantially with the ready availability of alcohol in the shopping center itself.

Additionally, the board discounted the evidence of alcohol-related activity presently impacting on the school as slight and inconsequential. The board took the view there was no evidence the littering was related to the purchase of alcohol in the vicinity and Mr. Donia's relating of four encounters with intoxicated persons in his four years as principal indicated there was no real problem with intoxication.

Common sense suggests, even if the alcoholic beverage containers presently littering the school playground perimeter and lunch area are *not* purchased in the immediate vicinity (which they assuredly must be given the number of nearby off-sale outlets), the availability of such beverages so close to the playground and on the same side of Vermont Avenue could only increase the problem. Mr. Donia related four examples of problems with intoxicated individuals which occurred in a recent one-year period—*not* over a span of four years—and one individual was escorted from the school premises on several occasions. Moreover, Mr. Donia considered these incidents serious and remembered them vividly. It is not unreasonable to infer that the incidents thus represent the "tip of the iceberg," more minor incidents having slipped from Mr. Donia's memory. Again, in any event, it is not illogical to deduce that more proximate availability of alcohol would increase the problems experienced by the school.

These inferences, reasonably drawn from the record with equal ease as those drawn by the board, and the clear body of experiential evidence linking alcohol-related problems in the general neighborhood of the school with the presence of off-sale outlets, provide ample support for the conclusion that issuance of another such license at the proposed location would further interfere with the operation of the school and add to an existing police problem. In sum, viewing the totality of the evidence in the framework of earlier cases and in the light most favorable to the department's decision, it is clear at the least "there could be a reasonable difference of opinion as to whether the issuance of the license would be inimical to public welfare and morals." (*Kirby* v. *Alcoholic Bev. etc. App. Bd., supra,* 261 Cal.App.2d at p. 129.) Accordingly, the board has exceeded its jurisdiction, substituting its view of the evidence for the reasonable view taken by the department.

The board was obligated to draw those reasonable inferences supporting the department's decision, as is this court. (*Kirby* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 7 Cal.3d at p. 436.) Doing so, the department's decision clearly is supported by the findings and the findings by substantial evidence. Hence, the department denied issuance of the license to the La Colonia Market within the reasonable exercise of its discretion.

The order of the board is reversed and the order of the department is affirmed.

Hanson (Thaxton), J., and Lucas, J., concurred.

On May 29, 1985, the opinion was modified to read as printed above.